740 F.2d 1513
 N.H. NEWMAN, et al., Plaintiffs-Appellees,
United States of America, et al., Amicus Curiae,
v.
Charles A. GRADDICK, Attorney General for the State of
Alabama, and Freddie V. Smith, Commissioner of the
Alabama Department of Corrections, et
al., Defendants-Appellants.
 Nos. 83-7077, 83-7422, 83-7617, 83-7680 and 84-7000.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 10, 1984.
 
 Frank M. Wilson, Sp. Asst. Atty. Gen., Montgomery, Ala., for Smith, Cook, Spears and Davis, et al.
 Albert S. Agricola, Jr., Asst. Atty. Gen., Montgomery, Ala., for Graddick.
 Thomas R. McAlpine, Asst. Atty. Gen., Alabama Dept. of Corrections, Montgomery, Ala., for Smith, Cook, Spears and Davis, et al.
 Terry R. Smyly, Montgomery, Ala., for defendants-appellants in No. 83-7617.
 John L. Carroll, Mandell & Boyd, Southern Poverty Law Center, Montgomery, Ala., for
 Alvin J. Bronstein, Nat. Prison Project of ACLU, Miriam R. Eisenstein, Civ. Rights Div., Washington, D.C., for amicus curiae.
 Appeals from the United States District Court for the Middle District of Alabama.
 Before RONEY, FAY and CLARK, Circuit Judges.
 RONEY, Circuit Judge:
 
 
 1
 These actions began in 1971 as separate lawsuits brought by inmates under 42 U.S.C.A. Sec. 1983 and 28 U.S.C.A. Sec. 1343(3) to redress a host of constitutional violations in the Alabama prison system. After extensive hearings, the district court ordered sweeping relief over ten years ago. In the margin we list the reported cases reflecting the course of litigation during the past decade,[1] and for easy identification of dates, a chronological listing of various events in this litigation.[2]
 
 
 2
 These five appeals, Nos. 83-7077, 83-7422, 83-7617, 83-7680, and 84-7000, are from the district court's: consent decree of January 18, 1983, contempt order of November 4, 1983, order of December 7, 1983, and contempt order of December 27, 1983.
 
 
 3
 The ongoing actions of some thirteen years demonstrate the immense complexity involved in the bringing of a state's penal system into compliance with constitutional requirements to the satisfaction of all parties involved, while at the same time working within the political framework and legislative constraints of that state. The issues on appeal are delineated fully in the opinions on each appeal that follow. Generally these appeals launch attacks on the validity of the district court's consent decree, the holdings of Attorney General Graddick and Commissioner Smith in contempt and the district court's determination to not consider motions to modify prior consent agreements until there is total compliance with those decrees.
 
 
 4
 Appeal No. 83-7077: we affirm the validity of the consent decree holding that state officials had the authority to bind incoming officials and that the consent agreement could be signed over Attorney General Graddick's objection, where his interest as Attorney General was not affected by the agreement. Graddick loses his challenge to the implementation committee established by this consent decree because he has experienced no adverse effect from it.
 
 
 5
 Appeal No. 83-7422: the district court's award of attorney fees to plaintiffs is proper since the consent decree was upheld.
 
 
 6
 Appeal No. 83-7617: we reverse the district court's holding of Attorney General Graddick in contempt on November 4, 1983.
 
 
 7
 Appeal No. 83-7680: we reverse the district court's holdings in the November 4 and December 7, 1983 orders since total compliance is not necessary for a consideration of a modification of the earlier consent decrees and the district court erred in ordering a release of inmates from the Alabama system without allowing the defendants to show that conditions of confinement are no longer unconstitutional.
 
 
 8
 Appeal No. 84-7000: we reverse the district court's contempt order of December 27, 1983 concerning Commissioner Smith.
 
 No. 83-7077
 January 18, 1983 Consent Decree
 
 9
 This appeal is from a January 18, 1983 consent decree. In February, 1980, Alabama Governor Fob James, upon his request, was appointed by the district court as receiver of the Alabama prison system to cure the ills catalogued by the court and to bring the system into compliance with the United States Constitution. On October 9, 1980, the district court approved a consent decree signed by counsel for plaintiffs, the Department of Corrections defendants, and Governor James. The consent decree contained a series of requirements of which three are of particular relevance here.
 
 
 10
 First, the defendants agreed to stop housing state inmates in the county jails and agreed to remove all inmates from county jails by September 1, 1981.
 
 
 11
 Second, the defendants agreed that all prisoners housed in multiple occupancy areas such as dormitories would be provided with at least 60 square feet of living space within the multiple occupancy areas excluding hallways, showers and toilet areas on or before June 1, 1982.
 
 
 12
 Third, the defendants agreed that "All other minimum standards established by the Pugh and James cases will be complied with as soon as is practical in all facilities of the Alabama prison system."
 
 
 13
 On January 3, 1983, the court commenced a hearing on the plaintiffs' motion to hold the defendants and the receiver in contempt of the October 9, 1980 consent decree, and on a cross-motion of the defendants to modify the decree. After presentation of evidence by the defendants and the receiver, counsel for plaintiffs, defendants, and the receiver informed the court that settlement had been reached between the parties. Only the Attorney General did not agree to the settlement. After a hearing on January 13, 1983, the district court entered the consent decree here appealed on January 18, 1983.
 
 
 14
 That decree is here challenged on essentially three grounds: first, the state officers who consented were in their last day of administration and had no authority to bind the incoming administration, second, the decree should not have been approved over the objection of the Attorney General and the incoming administration; third, the consent decree should not be effective because it was agreed to by the parties because of their perception of the district court's erroneous view that a prior consent decree, entered on October 9, 1980, could not be modified absent total compliance with that decree; and fourth, the consent decree created an implementation committee which impermissibly intrudes upon the functions properly belonging to the daily operation of the prison system.
 
 
 15
 An initial question is the standing of the Attorney General and the present Commissioner of Corrections to appeal the consent decree. The two stand in different positions. Attorney General Graddick was a party defendant both at the time of the consent decree and now. He was Attorney General and succeeded himself with the new administration. He objected to the consent decree. The Commissioner of Corrections, a party, at the time of the consent decree was Joseph Hopper. On January 24, 1983, six days after the entry of the decree, Appellant Freddie V. Smith was appointed Commissioner of Corrections by Governor George Wallace, who succeeded Fob James. Smith became a defendant in his official capacity pursuant to automatic substitution under Fed.R.Civ.P. 25(d). Fob James resigned as receiver of the prison system prior to his departure from office, a few days after entry of the consent decree. Governor Wallace has not sought to become the receiver, has not intervened in the lawsuit, and there is currently no court-appointed receiver.
 
 
 16
 Commissioner Smith has standing to appeal on the ground that Commissioner Hopper did not have authority to enter into a consent decree binding on the incoming administration. We hold, however, that Hopper did have that authority and that the consent decree is binding on the incoming administration. Therefore Smith, as a successor to Hopper, has no more standing to attack the consent decree than Hopper would have had if he had continued as Commissioner, since he stands as a representative in the same place that Hopper stood in connection with the lawsuit. See Cornelius v. Hogan, 663 F.2d 330, 332-35 (1st Cir.1981) (holding consent decree to apply to social services formerly provided by DPW, but now the responsibility of DSS and the fact DSS was not originally a party to the proceedings did not preclude its being bound by the decree).
 
 
 17
 As to Attorney General Graddick, we hold that as a party defendant who did not agree to the consent decree, he has standing to appeal the decree and assert the decree should not have been approved over his objection but, of course, to have any chance of prevailing, he would need to show that the decree adversely affects his interest as Attorney General of Alabama. He could not assert the interests of other parties to the litigation.
 
 
 18
 Defendants first argue that Receiver/Governor James and Commissioner Hopper did not have the authority to bind the incoming administration to the terms of the consent agreement. Governor James and Commissioner Hopper were parties to this lawsuit when the agreement was signed and were the current officials of the state. Since they were the current officials and the parties, they had the authority to sign the consent decree, and to bind the incoming officials. The successor state officials, upon taking office, became parties to this suit and to the consent decree through automatic substitution and stand in the shoes of their predecessors. Barnett v. Rodgers, 410 F.2d 995 (D.C.1969); see Fed.R.Civ.P. 25(d)(1); McKnight v. Craig Adm'r, 10 U.S. (6 Cranch) 183, 187, 3 L.Ed. 193 (1810); Ranson v. Brennan, 437 F.2d 513, 516 (5th Cir.), cert. denied, 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971); Wright v. County School Board of Greenville Co., 309 F.Supp. 671, 677 (E.D.Va.1970). IB Moore & T. Currier, Moore's Federal Practice Sec. 0.409, 326 (2d ed. 1980), citing United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932).
 
 
 19
 Graddick maintains that the trial court erred in approving the consent agreement over his objection. This Court stated in United States v. City of Miami, 664 F.2d 435, 440 (5th Cir.1981), that "[c]omplete accord on all issues, ... is not indispensable to the entry of any order." A consent agreement is a compromise between the parties to the agreement. Under the authority of City of Miami, the court could approve an agreement by parties without the Attorney General's consent and over his objection but could not bind or foreclose his interest in the matter agreed to. The issue is whether he had an interest that was prejudiced by the consent decree.
 
 
 20
 We affirm the district court's decision that the Attorney General had no interest which was prejudiced by the consent decree. Therefore, although he had standing to appeal, his appeal must fail because he has failed to show that he has an interest prejudicially affected by the decree.
 
 
 21
 The argument that the consent of these parties was ineffective because of their perception that the district court would not entertain a motion to modify is without merit. Although we have held that the district court should now consider the present conditions and a modification, the consent of the parties eliminates the need to consider now whether modification would have been appropriately considered in January, 1983. In any event, we have held that the district court did not err in holding that Graddick had no standing to seek to modify the decree in respects which were not prejudicial to the interest of the Attorney General. His was the only motion to modify filed with the court at the time the parties entered into the consent to a judicial decree.
 
 
 22
 Defendant Graddick argues that the Implementation Committee, as established by the consent agreement of January 28, 1983, impermissibly intrudes on functions belonging to the daily operation of the Alabama prison system.
 
 
 23
 In Newman v. Alabama, 559 F.2d 283 (5th Cir.1977), rev'd in part and remanded sub nom., Alabama v. Pugh, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), we held the 39-member committee to be an impermissible intrusion. The size of this committee, its credentials and the broad and sweeping mandate "to take any action" were the factors that we held to be intrusive. The current committee of four has appropriate credentials and has been assigned the specific tasks of assuring implementation of the court's orders and stating priorities and timetables. The functions and the composition of the committee are within the guidelines of Newman.
 
 
 24
 Commissioner Smith has voiced no opposition to this committee. He has had only praise for the committee and stated emphatically that the committee has been and continues to be of great assistance to him in implementing the broad mandate of the 1976 order, the October 9, 1980 consent agreement and the January 18, 1983 consent decree. It is only the Attorney General who is challenging the committee.
 
 
 25
 Graddick as a nonsigning party to the January 18, 1983 agreement can challenge the committee as to any adverse effect it may have on his interest as Attorney General. City of Miami, 664 F.2d at 442. In that the committee's functions are solely directed to areas in which Smith is responsible, there is no adverse effect as to any interest of Graddick. The district court correctly denied Graddick's arguments in this regard.
 
 
 26
 The consent decree of January 18, 1983 is affirmed.No. 83-7422
 
 Award of Attorney Fees
 
 27
 This appeal is from an order of June 27, 1983 awarding the plaintiffs attorney fees. After the entry of the consent decree on January 18, 1983, plaintiffs filed an application for attorney fees pursuant to 42 U.S.C.A. Sec. 1988. Over objection to an award of fees until the appeal from that decree had been decided, the district court awarded plaintiffs attorney fees of $68,634.79.
 
 
 28
 Four defendants have appealed that award: (1) Freddie V. Smith, Commissioner of the Alabama Department of Corrections; (2) James C. Cook, Deputy Commissioner of the Alabama Department of Corrections; (3) Larry Spears, Warden of Kilby Correctional Facility; and (4) J.L. Davis, Warden of G.K. Fountain Correctional Institute.
 
 
 29
 The defendants concede that parties who have vindicated rights through a consent decree are considered to have prevailed for the purpose of the award of attorney fees. Miller v. Carson, 628 F.2d 346, 348 (5th Cir.1980). Their sole contention is that if the consent judgment is set aside, they will not be entitled to an award of attorney fees.
 
 
 30
 This Court has not set aside the consent decree. Whether or not it is modified at some future time by the district court, the plaintiffs were the prevailing parties when it was entered, and a future modification would not make them less so. The order awarding attorney fees is affirmed.
 
 No. 83-7680
 
 31
 Orders of November 4, 1983 and December 7, 1983 Requiring
 
 Release of Prisoners
 
 32
 This is an appeal from orders entered on November 4 and December 7, 1983. The orders were generated by a motion from plaintiff for "additional emergency relief and/or contempt." In response to that motion, on September 30, 1983 the court entered an order for defendants Graddick and Smith to show cause why they should not be held in contempt for violating prior orders of the court concerning the Alabama State prison system.
 
 
 33
 After response and hearing on November 4, 1983 the district court entered an order which, among other things, ordered Commissioner Smith to release from confinement the number of inmates by which State facilities were decided to be overcrowded by April 15, 1984, the order to be effective on March 15.[3]
 
 
 34
 On November 14, 1983, Commissioner Smith filed a motion to vacate, alter or amend that order requesting the district court to delay the imposition of the release remedy until it could hold a hearing to determine if the current conditions in the Alabama prison system continue to violate the Constitution. The district court denied the motion to vacate on December 7, 1983.
 
 
 35
 The appellants pose two questions in their brief on this appeal: first, whether total compliance with the October 9, 1980 Consent Decree precludes the trial court from considering modification; and second, whether the trial court erred in ordering a release of inmates from the Alabama prison system. The appellees frame the issues as follows: first, whether the trial judge was correct in refusing to hear the motions to modify; and second, whether the district court's order requiring a release of prisoners is correct enforcement procedure under this Court's decision in Newman v. Alabama, 683 F.2d 1312 (11th Cir.1982).
 
 
 36
 We hold that total compliance with a prior judgment or consent decree is not required before a court can entertain a request for modification. The refusal to entertain the motion to modify was apparently based upon a wrong legal premise.
 
 
 37
 As discussed in No. 83-7077 above, total compliance with the October 9, 1980 consent decree does not preclude the district court's consideration of modification of that decree. The parties agreed in their consent decree to implement improvements in the prison system of Alabama. This consent decree, the agreement between the parties, was entered into within the context of ongoing judicial proceedings that span more than a decade. In fact, the agreements of these parties are contained in the court's 1976 order and subsequent modifications, the October 9, 1980 consent agreement and the January 18, 1983 consent decree. These decrees are judicial acts over which the court has continuing jurisdiction. United States v. Swift, 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932); United States v. Georgia Power Co., 634 F.2d 929, 932 (5th Cir.1981); Bros Incorporated v. W.E. Grace Manufacturing Co., 320 F.2d 594 (5th Cir.1963); System Federation No. 91 v. Wright, 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961).
 
 
 38
 Judicial acts are not inter partes contracts. As judicial acts over which the court has continuing jurisdiction, modification can be considered when: there is a clear showing of a grievous wrong evoked by new and unforeseen conditions, hardship and oppression, United States v. Swift, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932); significant time has passed and objectives have not been met, U.S. v. United Shoe Machinery Corp., 391 U.S. 244, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968); continuance is no longer warranted, Milk Wagon Drivers Union v. Meadowmoor Dairies, 312 U.S. 287, 298, 61 S.Ct. 552, 557, 85 L.Ed. 836, 844 (1941); a continuation would be inequitable, New York State Assoc. For Retarded Children, Inc. v. Carey, 706 F.2d 956, 967-69 (2d Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983); and each side has legitimate interests to be considered, King-Seeley Thermos Co. v. Aladdin Industries, Inc., 418 F.2d 31 (2d Cir.1969).
 
 
 39
 In United States v. Swift, 286 U.S. 106, 114-15, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932), the Supreme Court states:
 
 
 40
 A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. (citations omitted). The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative. (citation omitted). The result is all on whether the decree has been entered after litigation or by consent. (citation omitted). In either event, a court does not abdicate its power to revoke or modify its mandate, if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong. We reject the argument for the interveners that a decree entered upon consent is to be treated as a contract and not as a judicial act.
 
 
 41
 In Swift, the Court characterized the case before it as one involving rights fully accrued upon facts nearly impervious to change, and accordingly held that modification was inappropriate absent "a clear showing of grievous wrong evoked by new and unforeseen conditions." Id. at 119, 52 S.Ct. at 464. Where, however, a consent decree involves the supervision of changing conduct or conditions and is therefore provisional, modification may be more freely granted.
 
 
 42
 Over ten years have passed during this litigation and the parties have not achieved the objectives stated in the agreements. The decree in this action must be regarded as "provisional and tentative," and subject to "changing conduct or conditions." See Nelson v. Collins, 659 F.2d 420, 423-24 (4th Cir.1981) (en banc). The question is whether conduct or conditions have changed that would justify modification. Commissioner Smith took office after the consent decree was entered into. There is significant evidence to show that Commissioner Smith has done and is doing all that he can to achieve these objectives. Although significant monetary gains have been made and significant physical plant improvements have been instituted, the defendants have not been able to comply with the 60-square foot requirement for multiple occupancy areas and have not been able to remove all state prisoners from county jails. Moreover, since the October 1980 consent order was entered, the Supreme Court has had occasion to clarify Eighth Amendment analysis in the prison context. See Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). These factors justify a consideration of modification by the Court. Nelson v. Collins, supra.
 
 
 43
 Upon remand the court should hold a hearing to consider the present conditions in Alabama prisons to determine the extent to which they have been brought into constitutional alignment. The consent decrees provide a proper framework and a means for reaching constitutionality in the prisons of Alabama. These constitutional standards are provided for by the Eighth Amendment. The Supreme Court and this Circuit have delineated the conditions to be met to reach constitutionality as to conditions of confinement. These tests are to be followed in considering modification of the consent decrees. See Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); Newman v. State, 559 F.2d 283 (5th Cir.1977), rev'd in part and remanded sub nom. Alabama v. Pugh, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); Jones v. Diamond, 636 F.2d 1364 (5th Cir.1981) (en banc), cert. dismissed, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981).
 
 
 44
 As to the release question, we note that the state officers consistently misstate the relief ordered. The court does not require mass release of prisoners from state custody. The order requires the release of prisoners from certain facilities that are so overcrowded as to make the retention of prisoners therein unconstitutional. In taking the prisoners from those facilities, the state is free to continue their confinement in any constitutional facility. If indeed the result of such a court order is the release of prisoners from state custody, that result is the fault of the state officers in not providing alternative constitutional housing for its prisoners. The misstatement of the federal court action is a disservice to the administration of justice. Nevertheless, we hold that the district court should have allowed the defendants to show that the conditions of confinement were no longer unconstitutional before ordering the state to remove them from those institutions.
 
 
 45
 The release ordered by the court on November 4, 1983 precluded any review of the current conditions of the prison system. Without a review of prison conditions no determination can be made as to the constitutionality of those conditions. Without such review in the light of alleged changed conditions of prison facilities, a prisoner release is unwarranted. In Newman v. Alabama, 683 F.2d 1312 (11th Cir.1982), we indicated that the state had the right to move to modify the consent decree based on changed circumstances. 683 F.2d at 1318.
 
 
 46
 In this action, the plaintiff sought emergency relief or contempt. The court ordered the defendants to show cause why they should not be held in contempt. Commissioner Smith responded seeking to delay the prisoner release until a determination could be made as to the constitutionality of the prison system. This motion was denied. The court's denial foreclosed a review of the constitutionality of the system. The decision prohibited any consideration of less intrusive measures and eliminated any exploration of alternatives to effecting a prisoner release.
 
 
 47
 The contention could be made that this decision would simply mean that the defendants could continually delay enforcement of a remedy for unconstitutionality by seeking modification every time enforcement is sought. This should not be a necessary result. The good faith of the defendants and the substantiality of the alleged improvements would always be a consideration before a hearing on modification would be required.
 
 
 48
 Only Commissioner Smith, insofar as the appeals are concerned, would have the standing to seek modification. We affirm the district court's decision that Graddick does not have standing to seek modification of the prior decision. The court said:
 
 
 49
 Finally, as to the Attorney General's motion to modify, filed herein September 8, 1982, this Court is of the opinion that the Attorney General does not have standing to petition in this Court to modify an Order which applies to the administration of prisons when he does not have any authority to administer them. Therefore, this Court will issue an order denying the motion.
 
 
 50
 We therefore vacate and remand the order requiring the release of prisoners.
 
 No. 84-7000
 
 51
 December 27, 1983 Order Holding Commissioner Smith in Contempt
 
 
 52
 This is an appeal from an order on December 27, 1983, holding Freddie V. Smith, Commissioner of the Alabama Department of Corrections, in contempt of court.[4] The history of the case and facts concerning other issues that were consolidated for argument with this appeal are set forth in the discussions under Nos. 83-7077, 83-7680 and 83-7617 above.
 
 
 53
 On September 30, 1983, in response to a motion by plaintiffs, the district court ordered Commissioner Smith and Attorney General Charles A. Graddick to show cause why they should not be held in contempt of prior orders of the court. On October 11, 1983, Commissioner Smith filed a request for an evidentiary hearing on the contempt citation, a response to the show cause order, and a request for declaratory relief and instructions as to certain matters in litigation. An amended order required the defendants to show cause why they should not be held in contempt for violating that portion of a consent decree dated October 9, 1980 which required that all state inmates be removed from county jails and that each inmate confined in a multiple occupancy area be furnished with 60 square feet of living space exclusive of halls, showers, and toilet areas.
 
 
 54
 On November 4, 1983, the district court refused to hold Commissioner Smith in contempt. The court did order Smith to release sufficient inmates from the facilities in the system that are overcrowded to bring the population in line with the 60-square foot requirement. On November 14, 1983, Commissioner Smith filed a motion to vacate, alter or amend the order concerning release requesting that the court delay the release order until it had a hearing to determine whether the current conditions in the Alabama prison system continue to violate the United States Constitution. The district court denied the motion without opinion on December 7. Commissioner Smith's appeal from the November 4 and December 7, 1983 orders has been decided in this opinion under No. 83-7680.
 
 
 55
 Commissioner Smith filed a motion with the district court on December 9, 1983 for a stay of the November 4, 1983 order pending appeal. At a hearing on that motion on December 22, 1983 the district court expressed concern that it had erred by failing to hold Commissioner Smith in contempt in its November 4 order. On December 27, 1983, an order and memorandum opinion was issued to that effect. This Court in Newman v. Alabama, 683 F.2d 1312 (11th Cir.1982) had reversed a prior judgment of the district court ordering the release of prisoners because the plaintiffs had failed to show that relief could not have been obtained through contempt proceedings. In reflecting on the perceived requirements of that decision, the district court in a written opinion stated:
 
 
 56
 Upon review of the matter, this Court noticed that the United States Court of Appeals in Newman v. State, 683 F.2d 1312, 1318, in overruling the ordered release of prisoners, stated that Plaintiffs "did not seek the imposition of sanctions against the State Officials who were charged with reducing the prisoner population in the county jails." That Court apparently limited the effect of that opinion on this Court to persons "charged with reducing the prison population", both in county jails and in State institutions. In searching the records of this Court, this Court has concluded that all of the officials now before the Court, who were before the Court at the time of the Order directing reduction of the population of the prisons to exclude overcrowding, are officials charged with reducing overcrowding. However, this Court is impressed that, in Newman v. State, 559 F.2d 283, 293, the Court of Appeals observed that the Governor "has no hand in the operations of the Alabama penal system.... The statute vests all power and control in the Board." Such control as was then vested in the Board is now vested in the Commissioner. CODE OF ALABAMA [1975], Sec. 14-1-1.1.
 
 
 57
 This Court has in previous Opinions expressed its concern as to which State official should properly be considered for failing to reduce prison overcrowding or some related default in this Court's earlier Orders. Because of the conflicting rights of various parties to this proceeding and the inability to perform or the difficulty in performing the Orders of this Court, the Court has been in doubt as to what officials are charged with reducing the prison population in the county jails and in the State penal institutions and what officials have a current ability to make some changes so as to eliminate the unconstitutional overcrowding of such institutions. The Court is impressed that its primary duty is to avoid undue delay in effecting relief from such unconstitutional conditions. In an abundance of precaution in order to satisfy the Court of Appeals' mandate to charge with contempt the officials who were charged with reducing prison population, this Court reluctantly concludes that it erred in not including Commissioner Smith in the contempt Order entered November 4, 1983. In pending proceedings this Court has a duty to correct its own errors. This Court is, therefore, of the opinion that the least intrusive permanent remedy is to hold both Defendants Graddick and Smith in civil contempt of this Court and to fine them jointly $1.00 a day for each inmate held in confinement of less than 60 square feet for more than one month at any one time beginning on the date of this Opinion and Order pursuant thereto.
 
 
 58
 Thus, the Court held Commissioner Smith in contempt with the same kind of order that it had previously used for Attorney General Graddick. Smith argues on this appeal that: the court erred in assessing a contempt fine without notice and hearing; he was entitled to show the present constitutional conditions of the Alabama prisons; Newman v. Alabama did not mandate contempt citations regardless of current conditions; he was unable to comply with prior orders; and contempt was inappropriate because the trial court had found substantial improvement in the Alabama prison system due to the efforts of Commissioner Smith.
 
 
 59
 We hold that finding Smith in contempt without further notice and an opportunity to be heard was error in view of the findings which the court had made in its November 4 decision. While condemning the activity of Attorney General Graddick, recited under No. 83-7617 in this opinion, the district court made these findings as to the activity of Commissioner Smith:
 
 
 60
 Commissioner Smith's efforts to rid the State penal institutions of long-existing constitutional improprieties is well known. It has been commended by the Prison Implementation Committee. The Legislature adopted a joint resolution supporting his proposed utilization of the SIR Program. Arguably, the Legislature would have changed the law, pursuant to which the program was judicially determined to have been without authorization, had those matters been timely called to its attention. This Court does not, nor does anyone, question Commissioner Smith's good faith.This Court does not understand how either Commissioner Smith or Attorney General Graddick could have performed the difficult tasks ordered by this Court in view of the circumstances existing at pertinent times. Other Defendants--Governor James and former Commissioners Hopper and Britton--contributed greatly to improvement of the penal institutions and are not involved in the current citation--nor should they be in the opinion of this Court.
 
 
 61
 The primary question in civil contempt matters is whether or not the Order of the Court has been performed by those ordered to do so. Intent and good faith, while relevant to the amount of punishment, are not defenses to the charge. Newman v. Alabama, 683 F.2d 1312, 1318, n. 16. Mr. Graddick's appeal, in which he prevailed and from which no further review was requested, resulted in a binding direction to this Court. Newman v. State of Alabama, supra, at p. 1319, 1320:
 
 
 62
 '... [T]he fact of unconstitutional overcrowding of state prisoners in county jails could not be disputed.'
 
 
 63
 '[P]laintiffs had a complete legal remedy had they only availed themselves of it.... [T]he law provided the plaintiffs a procedure for obtaining full compliance with that decree in the event the State refused to abide by its terms: a civil contempt proceeding and coercive sanctions.'
 
 
 64
 Sanctions suggested were to incarcerate one or more of the Defendants or fine the recalcitrant officials. That Court noted that the finding that civil contempt was the proper remedy was correct only if the unconstitutional conduct could not have been relieved by action of the District Court less intrusive of State functions (at p. 1320). They found "that it could have". (At p. 1320).
 
 
 65
 * * *
 
 
 66
 * * *
 
 
 67
 In an attempt to comply with this Court's Orders, Defendant Smith implemented the SIR Program which has been described by the Prison Implementation committee as "imaginative and innovative" and which could contribute greatly to the reduction of inmates housed in the county jails.
 
 
 68
 * * *
 
 
 69
 * * *
 
 
 70
 Commissioner Smith now faces conflicting Orders of a State and a Federal court. This Court, in its prior Orders, has ruled that no State inmates can be housed in county jails and that no inmate can be brought into the State system unless bed space is available for him within an institution's designed capacity. The State Court Order implicitly requires Defendant Smith to place those inmates currently assigned to the SIR Program either in one of the county jails or in a major institution of the prison system. The evidence presented to this Court clearly shows that he can do neither without violating this Court's prior Orders. The evidence before this Court further shows that the Alabama Legislature will next meet in February, 1984, and that there is a likelihood that Defendant Smith can obtain authority for the SIR Program at that legislative session. Understandably, Commissioner Smith has petitioned this Court for a declaratory judgment and instructions.
 
 
 71
 In the face of these findings, it seems the district court did not fault Commissioner Smith for his own activity, but simply thought it was necessary to hold Smith in contempt citation in order to justify the release order if other officers of the state did not use their power to effect the remedy sought by the court. There is no legal support for this theory of contempt, nor is it mandated by our prior opinion in Newman v. Alabama, when we stated:
 
 
 72
 While a federal court is always reluctant to coerce compliance with its decrees by incarcerating a state official, if that official is in contempt, there can be no doubt of the court's authority to do so.... Another sanction might be to fine the recalcitrant officials.
 
 
 73
 683 F.2d at 1318. This language does not endorse a deviation from the traditional concept of civil contempt as a sanction designed to compel a person to do what the court has ordered him to do. Since contempt is a conditional sanction, the person in civil contempt must be given the opportunity to bring himself into compliance. Lance v. Plummer, 353 F.2d 585, 592 (5th Cir.1965). Thus, inability to comply is a complete defense to a contempt citation. United States v. Rylander, 460 U.S. 752, ----, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521, 528 (1983); United States v. Hayes, 722 F.2d 723, 725 (11th Cir.1984). A person in civil contempt holds "the keys to his prison." See generally, 3 C. Wright, Federal Practice and Procedure Sec. 704 (2d ed. 1982). It is true that the Court in Newman v. Alabama noted that good faith would not preclude a contempt citation. 683 F.2d at 1318 n. 16. But a person who attempts with reasonable diligence to comply with a court order should not be held in contempt. Powell v. Ward, 643 F.2d 924, 931 (2d Cir.1981).
 
 
 74
 Commissioner Smith suggests in his brief that
 
 
 75
 [h]ad the court given Commissioner Smith the opportunity of a hearing it would have learned that after the October 26 hearing the Governor of Alabama called a special session of the Alabama Legislature at great expense to the taxpayers. At that session the legislature passed statutes authorizing the SIR program and appropriating $10 million to the Department of Corrections to solve overcrowding and further improve programs. Had the trial court given Commissioner Smith the opportunity to be heard it would have further learned that by expanding the newly authorized SIR program and increasing capacity and programs within the system Commissioner Smith will remove all state inmates from county and city jails and eliminate any further backlog through at least June, 1985.
 
 
 76
 We agree with Commissioner Smith that evidence of that situation would be relevant to the imposition of sanctions against him.
 
 
 77
 There is no contest in this case that inmates must be removed from the county jails. There is considerable debate as to whether the 60-square foot requirement is an absolute requirement regardless of what other conditions may prevail in the prisons. See Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). The intransigence of the plaintiffs on this point before the district court is not in keeping with the law that Eighth Amendment violations in prisons turn on the totality of circumstances and not on any individual isolated factor. See Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir.1981) (en banc).
 
 
 78
 The order of contempt entered by the district court included Attorney General Graddick to ensure that nothing in the December 27 order relieved him from the prior order of contempt.
 
 
 79
 Attorney General Graddick filed a notice of appeal from the December 27 order to make sure both the prior order and this order were dealt with on his appeal. Under No. 83-7617, we have decided the appeal of the contempt order as to Attorney General Graddick entered on November 4. That opinion controls the decision of his appeal from this amended December 27 order. Thus the December 27 order of contempt as to both Smith and Graddick is reversed.
 
 No. 83-7617
 
 80
 Contempt Order Against Attorney General Graddick
 
 
 81
 This is an appeal by Attorney General Graddick from a contempt order entered on November 4, 1983.[5] The proceedings leading up to that order are recited in the discussion under No. 83-7680, the appeal which challenges the merits of that order.
 
 
 82
 The district court ordered defendant Graddick, for his contempt of Court, to pay into the Court each month, beginning on November 20, 1983, a sum equal to $1.00 for each State inmate held in any penal institution in the State where overcrowded conditions have existed for 30 days or more, to continue until further order of the Court.
 
 
 83
 A partial recitation of the district court Memorandum Opinion which precedes the contempt order shows the basis of the decision that Graddick was in contempt of court.
 
 
 84
 Although Mr. Graddick is a party to this lawsuit and seeks to remain so, he apparently has no knowledge of even the most basic information concerning the overcrowded conditions in the Department, the cost thereof or the potential liability therefor.
 
 
 85
 There is substantial credible evidence that Defendant Graddick has attempted to influence the Alabama Board of Pardons and Paroles to follow a very restrictive policy in granting paroles and that that policy has been one of the most significant factors in creating the currently existing overcrowded conditions. There is no evidence to the contrary. The Attorney General has publicly and often expressed strong opposition to the release of prisoners before the expiration of their terms. His public utterances thereon have been widespread and repeated. One might think that he completely disagrees with the State of Alabama Parole Board and the laws which justify the existence thereof. His right to express his disagreement with the law is, of course, protected by the First Amendment. His oath of office bound him to support the Constitutions of the United States and of the State of Alabama but not the laws of the State of Alabama. CODE OF ALABAMA, State Constitution Article XVI, Sec. 279. His duty is defined in Sec. 36-15-21 as follows:
 
 
 86
 'All litigation concerning the interest of the state, or any department thereof, shall be under the discretion and control of the attorney general.'
 
 
 87
 He has wide discretion in determining what actions he conceives to be in the best interests of the State of Alabama. Mobile Oil Corp. v. Kelley, 353 F.Supp. 582 (S.D.Ala.1973); Powers v. U.S.F. & G. Co., 236 Ala. 389, 182 So. 758; Payne v. State, 48 Ala.App. 401, 265 So.2d 185. He has a duty to give his opinion "in writing, or otherwise, on any question of law connected with the interests of the State or with the duties of any of the State departments, when required by the governor ... or any other officer or department of the State when it is made, by law, his duty so to do." CODE OF ALABAMA, Sec. 36-15-1(1). His right to access to courts to redress grievances is protected by the First Amendment. Clearly, he had a right and a duty to participate in this litigation and to appeal from Orders that he considered erroneous. He also had a right to participate in State court litigation in related matters.
 
 
 88
 Only his unmitigated arrogance in criticism of the difficult decision by which his fellow State employees sought to comply with the Orders of this Court and his wasteful delay in attacking Commissioner Smith's attempts to secure aid from criminals to their victims and relief from overcrowding are, arguably, indicative of any active contempt for this Court.
 
 
 89
 The Court must decide whether those matters, while not inconsistent with such active contempt, are at least equally consistent with a good faith effort to perform difficult statutory duties, coupled with an exercise of First Amendment rights.
 
 
 90
 Defendant Graddick is a party to this lawsuit at his own request. On more than one occasion, he has resisted the Plaintiffs' attempts to dismiss him. As a party to this lawsuit, Defendant Graddick has a responsibility to comply with this Court's Orders. In its most recent Order, this Court created the Prison Implementation Committee and required all parties to cooperate with that Committee in seeking solutions to the difficult problems related to compliance. Defendant Graddick chose not to do that. By his own admission, he knows nothing about the number of bed spaces available in the prison system; knows nothing about the number of inmates currently held in overcrowded conditions; and knows nothing about the amount of funding necessary to operate the prison system constitutionally nor the number of guards needed. He has never met with Defendant Smith to discuss alternatives to comply with this Court's Orders and has made no substantial recommendation as to how to solve overcrowding.
 
 
 91
 It is this lack of attempt to comply and the failure to cooperate with the Implementation Committee or to voice his concern about the SIR Program at a time when Commissioner Smith could have attempted to gain effective legislative approval that forms the basis for this Court's decision to hold Defendant Graddick in civil contempt. Defendant Graddick cites United States v. Rylander, U.S. [752, 103 S.Ct. 1548] 75 L.Ed.2d 521 (1983), to support his contention that he has a present inability to comply with this Court's Orders. In Rylander, the United States Supreme Court held that the burden of proof is on the party alleging impossibility to satisfy the Court that he is clearly unable to comply with its Orders. Defendant Graddick has failed to meet that burden. The evidence shows, not that he is unable to comply, but by his admission he has made no attempt whatsoever to do so, and he has purposely or unwittingly placed a stumbling block in Commissioner Smith's attempt to do so.
 
 
 92
 Defendant Graddick asserts that he represents the interests of the people of Alabama in this litigation. The evidence before this Court tends to show that his actions have been anything but in the best interest of those people. It cannot be disputed that, if the State of Alabama is to operate a prison system, conditions of confinement in that system must be constitutional. Defendant Graddick has by his own admission done absolutely nothing to ease overcrowding in the prison system and bring this expensive lawsuit to an end. By allowing Defendant Smith to expend tax money and possibly incur substantial personal or official liability by implementing the SIR Program when he felt the program to be illegal, Defendant Graddick certainly acted against the best interest of the people. By opposing parole, Defendant Graddick has probably substantially increased the cost to the taxpayers of operating the prison system.
 
 
 93
 Defendant Graddick contends that he has no ability to comply with this Court's Orders. If this Court accepted that contention, its only alternative would be a massive release of prisoners. This was the remedy ordered by this Court which Mr. Graddick successfully terminated by appeal from an earlier Opinion and Order of this Court.
 
 
 94
 * * *
 
 
 95
 * * *
 
 
 96
 What can this Court do, least intrusively on State functions, to terminate the unconstitutional confinement?
 
 
 97
 Mr. Graddick says the remedy for the unconstitutional confinement which is least intrusive upon State of Alabama functions is that he be jailed or fined for contempt of Court. He does not say how this will purge the unconstitutional confinement, nor does he say to what extent his opinion is colored by the opinion of the Court of Appeals in Newman. He does imply that the Governor and the Legislature may appropriate money to construct adequate prison space, but no one suggests that this remedy will relieve the overcrowding in less than 18 months. The evidence is otherwise (footnotes omitted).
 
 
 98
 In evaluating the relative intrusiveness of remedies for the unconstitutional condition of the prisons, the district court decided that the least instrusive permanent remedy was to hold Graddick in civil contempt. It then said:
 
 
 99
 A reasonable time must be given to determine whether the contempt citation of Mr. Graddick or other factors will prompt the Governor, the Legislature or the Parole Board of the State of Alabama, separately or severally, to remedy the problem. The Court is of the opinion and finds that, if the unconstitutional confinement of State inmates has not been terminated on or before March 15, 1984, and on equal date of each month thereafter until this Court orders otherwise, Commissioner Smith must be clothed with authority by Order of this Court to select a number of inmates least deserving of continued confinement and to release from further State confinement enough of those inmates so that unconstitutional overcrowding will no longer exist in institutions where State prison inmates are confined (footnote omitted).
 
 
 100
 Without regard to whether Graddick's actions were contemptuous, we hold that it was improper to enter a sanction against Graddick for that contempt geared to the number of inmates held in overcrowded prisons. Civil contempt is only appropriate where the proof of noncompliance with a court order is clear and convincing. United States v. Hayes, 722 F.2d 723, 725 (11th Cir.1984). Good faith is no excuse for noncompliance. Newman v. Alabama, 683 F.2d 1312, 1318 n. 16 (11th Cir.1982); but see, Powell v. Ward, 643 F.2d 924 (2d Cir.1981) (one who shows reasonable diligence cannot be held in contempt). Inability to comply, however, is a complete defense. United States v. Rylander, 460 U.S. 752, ----, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521, 528 (1983); Hayes, 722 F.2d at 725. See New York State Association for Retarded Children v. Carey, 631 F.2d 162 (2d Cir.1980). There is nothing in this record which shows that Graddick so controls the prison population that he "holds the keys to his jail cell" for a contempt citation. That the remedy is framed in terms of a fine, makes that principle no less applicable.
 
 
 101
 There is no authority for holding Attorney General Graddick in civil contempt "to prompt the Governor, the Legislature or the Parole Board of the State of Alabama, separately or severally, to remedy the problem." This so-called "hostage" theory of contempt, as discussed in the portion of this opinion dealing with Commissioner Smith's contempt citation, has no legal support.
 
 
 102
 The frustrations with the prolonged litigation in this case and the apparent intransigence of those who could remedy the unconstitutional conditions perceived by the plaintiffs is evident from the district court's memorandum. We are concerned that the appellate decisions in the case may have contributed to the difficulties of the district court in fashioning appropriate remedies and in obtaining compliance with its orders. Nevertheless, we are bound to reverse the contempt citation in view of the well-established law of contempt.
 
 
 103
 As a party to this suit, Graddick is subject to a contempt citation for improperly interfering with the orders of the court, even though he does not have the ability to bring the Alabama prison system into compliance with previous orders of the district court. See 18 U.S.C.A. Sec. 401(3); Backo v. Local 281, United Brotherhood of Carpenters, 438 F.2d 176, 181 (2d Cir.1970) (counseling disobedience to court order is contempt).
 
 
 104
 This Court holds that the actions of the Attorney General could not be the basis for a contempt holding. The district court's basis for finding contempt rested upon either activity by the Attorney General which could not be held directly responsible or conduct not clearly violative of the court order.
 
 
 105
 First, it is partially based on the bringing of state litigation by the Attorney General, for which he could not be held in contempt, absent a specific injunction against such action, if that would be appropriate at all. Second, contempt is found for Graddick's criticism of fellow officials, delay in bringing the suit, and failure to cooperate with the Implementation Committee. The January 6, 1983 consent decree provided for the formation of an Implementation committee and charged the committee "with the responsibility of working with the Governor, the Commissioner of Corrections, and all other relevant state officials in monitoring and assuring implementation of the Court's orders in the most expeditious and fiscally sound manner possible". None of the above-mentioned actions amount to clear and convincing proof that Graddick violated the court-sanctioned consent decree.
 
 
 106
 The Court holds that engaging in state litigation and the other activities cited in the district court's order would not be contemptuous, absent court orders specifically addressing such activities.
 
 
 107
 The order of contempt against Attorney General Graddick is reversed.
 
 
 108
 AFFIRMED IN PART, REVERSED, VACATED and REMANDED IN PART.
 
 
 
 [1]
 Newman v. Alabama, 349 F.Supp. 278 (M.D.Ala.1972), aff'd in part, 503 F.2d 1320 (5th Cir.1974), cert. denied, 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975) (holding Alabama prison system's medical services unconstitutional); Pugh v. Locke, 406 F.Supp. 318 (M.D.Ala.1976), aff'd with modifications sub nom.; Newman v. Alabama, 559 F.2d 283 (5th Cir.1977), rev'd in part and remanded sub nom., Alabama v. Pugh, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (holding Alabama prison system's living conditions and 39-member Implementation Committee unconstitutional); Newman v. Alabama, 466 F.Supp. 628 (M.D.Ala.1979); Newman v. State, 683 F.2d 1312 (11th Cir.1982) (reversing district court's order of December 14, 1981 ordering prisoner release and holding civil contempt proceedings and coercive sanctions must precede prisoner relief)
 
 
 [2]
 January 18, 1983 District court order and opinion approving consent agreement filed January 6, 1983. Denial of Graddick's motion to modify
 February 2, 1983 Quarterly report of Commissioner filed.
 July 21, 1983 Supplemental interim report of implementation committee filed.
 September 6, 1983 Plaintiff's motion for additional relief, temporary restraining order, pre-sentencing investigation and hearing.
 September 8, 1983 District court order denying plaintiff's motion for temporary restraining order. Pre-sentencing investigation set for hearing.
 September 16, 1983 District court order continuing pre-sentencing investigation.
 September 29, 1983 Pre-sentencing investigation.
 September 30, 1983 District court orders Smith and Graddick to show cause.
 October 11, 1983 Defendant Smith's response to show cause and Graddick's response and motion to dismiss.
 October 12, 1983 District court order setting plaintiff's September 29, 1983 motion for additional emergency relief and/or contempt for October 26, 1983 hearing.
 October 18, 1983 Interim report of implementation committee of October 14, 1983 filed.
 October 24, 1983 District court order amending September 30, 1983 show cause order and denying Graddick's October 11, 1983 motion to dismiss or for more definite statement. Graddick renews motion to modify.
 October 26, 1983 Hearing on motion for additional emergency relief and/or contempt.
 November 4, 1983 District court order and judgment restraining defendants from enforcing State court order, Graddick v. Smith, No. 83-1262-P, ordering Smith to continue implementation of SIR program. Holding Graddick in contempt of court and to pay fine and ordering prisoner release Graddick appeals this order.
 November 4, 1983 Implementation committee report of November 4, 1983.
 November 14, 1983 Smith's motion to vacate, alter or amend order of November 4, 1983.
 November 14, 1983 Smith's petition to modify and for other relief.
 November 23, 1983 Graddick's motion for relief from contempt and fine.
 December 7, 1983 District court order holding Smith in contempt.
 December 9, 1983 Smith's notice of appeal from November 4, 1983 order and denial of December 7, 1983 motion to vacate, alter or amend.
 December 9, 1983 Graddick's notice of appeal from denial of Smith's from December 7, 1983.
 December 28, 1983 Smith's notice of appeal from December 27, 1983.
 December 29, 1983 Graddick's notice of appeal from December 29, 1983 order.
 
 
 [3]
 The district court ordered also to: (1) restrain the defendants from enforcing an order and judgment of a state court; (2) require Commissioner Smith to continue to implement the so-called SIR program in accordance with his interpretation thereof, a program designed to effect the release of certain prisoners from unconstitutional conditions; (3) taxed costs against defendant Graddick; and (4) hold defendant Graddick in contempt with a continuing fine for each inmate held in an overcrowded penal institution. The first three are not of primary concern on this appeal. Graddick's contempt order is reviewed under No. 83-7617
 
 
 [4]
 ORDERED by this Court that Defendants Graddick and Smith, for their contempt of this Court, pay into this Court on or before the twentieth day of each month, beginning on the date of this Order and continuing until the further order of this Court, a sum equal to $1.00 a day for each State inmate held in any penal institution in this State wherein overcrowded conditions have existed for 30 days or more
 
 
 [5]
 Pursuant to the Memorandum Opinion of this Court of even date herewith, it is the ORDER, JUDGMENT and DECREE of this Court as follows:
 
 
 [1]
 That the Defendants herein be, and they are, restrained from enforcing the Order and Judgment of the Circuit Court of Montgomery County, Alabama, entered in the case of Graddick v. Smith, Civil Action No. CV-83-1262-PH prior to March 15, 1984;
 
 
 [2]
 That Commissioner Smith is ORDERED to continue to implement the SIR Program in accordance with his interpretation thereof until March 15, 1984;
 
 
 [3]
 That Defendant Graddick, for his contempt of this Court, is ORDERED to pay into this Court on or before the twentieth day of each month, beginning on November 20, 1983, and continuing until the further order of this Court, a sum equal to $1.00 for each State inmate held in any penal institution in this State wherein overcrowded conditions have existed for 30 days or more;
 
 
 [4]
 That on March 15, 1984, and on or before the 15th day of each month thereafter, Commissioner Smith is ORDERED to release from confinement the number of inmates by which State facilities are overcrowded. Such inmates shall be selected by Commissioner Smith based on his consideration of those least deserving of continued confinement; and
 
 
 [5]
 That the costs of these proceedings be, and the same are hereby, taxed against Defendant, Charles A. Graddick, for which execution may issue
 DONE this 4th day of November, 1983.
 The order was confirmed in an order of December 27, 1983 from which he appealed under No. 84-7000. Both appeals are considered in this portion of the opinion.