*1344 BARKETT, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority that Loyd was entitled to an evidentiary hearing in the district court and that his constitutional challenge to the PLRA must fail under our precedents. However, I believe that the majority errs in holding that the Attorney General was entitled to seek termination of the entire November 1994 decree without satisfying Article III standing requirements.
There is no question that the Attorney General would be a permissible intervenor in a case where one of the parties to a consent decree also sought termination. Intervention in that context would not require a showing of Article III standing. Chiles v. Thornburgh, 865 F.2d 1197, 1212-13 (11th Cir.1989). Here, however, the Attorney General alone asked the district court to terminate the November 1994 decree. The parties to the decree, the county defendants, did not and have not sought to join the Attorney General’s motion to terminate or independently move to terminate the decree. The Supreme Court’s decision in Diamond v. Charles, 476 U.S. 54, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986), indicates that the Attorney General must satisfy Article III standing requirements in these circumstances.
In Diamond, noting Article Ill’s requirement of injury-in-fact, the Court observed that, because of the profound effect of judicial review on the populace,' “the decision to seek review must be placed ‘in the hands of those who have a direct stake in the outcome.’ It is not to be placed in the hands of ‘concerned bystanders,’ who will use it simply ‘as a vehicle for the vindication of value interests.’ ” Id. at 62, 106 S.Ct. 1697 (citations omitted). Accordingly, the Court held that “an intervenor’s right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Article III.” Id. at 68, 106 S.Ct. 1697. Because the defendant in that case, the State of Illinois, had not filed an appeal, the intervenor could not simply attempt “to ride ‘piggyback’ on the State’s undoubted standing,” id. at 64, 106 S.Ct. 1697, but had to show that he had satisfied Article Ill’s demands in order to appeal since “in the absence of the State [as an appellant], there is no case for Diamond to join.” Id. See also United States v. AVX Corp., 962 F.2d 108, 112-13 (1st Cir.1992) (holding that intervenor who opposed consent decree could not appeal the district court’s order approving the decree without satisfying Article III standing requirements). The same result obtains here. Because the Attorney General alone asked the district court to terminate the Nov 1994 consent decree, it must show that it has a direct stake in whether or not that consent decree will continue in force. Accordingly, the majority errs in concluding that the Attorney General was entitled to seek termination of the consent decrees without satisfying Article III standing requirements.
Our decision in Chiles is not to the contrary. In Chiles, we recognized that a party seeking to intervene need not establish Article III standing “as long as there exists a justiciable case or controversy between the parties already in the lawsuit.” Chiles, 865 F.2d at 1213. Here, however, at the time the Attorney General moved to terminate the consent decrees, there was no ongoing case or controversy between the parties to the decree — the case between them had been settled by the consent decree that the Attorney General was seeking to terminate. ‘ Moreover, the fact that the county defendants acquiesced in the termination of the consent decrees before both the district court and this Court is not sufficient to create a ease or controversy. The Supreme Court rejected a similar contention in Diamond. In Diamond, the State of Illinois filed a “letter of interest” expressing its support for the intervenor’s position and noting that it was still a “party” to the litigation. The Court found that this “mere expression of interest ... insufficient to bring the State into the suit as an appellant,” explaining that *1345 “[t]he State’s general interest may be adverse to the interest of appellees, but its failure to invoke our jurisdiction leaves the Court without a ‘case’ or ‘controversy’ between appellees and the State of Illinois.” Diamond, 476 U.S. at 63-64, 106 S.Ct. 1697. The same principle applies here. Because the county defendants did not invoke the district court’s jurisdiction and move to terminate the decrees, there was no case or controversy between the plaintiffs and the county defendants at the time the Attorney General filed the motion to terminate.
The majority concludes that the Attorney General has a sufficient direct and substantial interest in the November 1994 consent decree, even though he was not a party to the decree, because one of the paragraphs of the consent decree requires transfer of inmates from county jails to state-run jails within a specified period of time. I agree that the Attorney General has a direct stake in the continued existence of this portion of the consent decree. I do not think, however, that the fact that the Attorney General has a direct stake in one provision of this consent decree, albeit an important one, gives him the right to seek the termination of the entire decree, the vast majority of which only relates to the county defendants. The majority offers no reason why the Attorney General should be able to seek termination of those portions of the decree that only relate to the county defendants. Moreover, as the majority recognizes, the state and county defendants have different and adverse interests, making it inappropriate for the Attorney General to act as a representative for the county defendants.
This reasoning finds support in our decision in Newman v. Graddick, 740 F.2d 1513 (11th Cir.1984). In Newman, we considered whether the Attorney General of Alabama had standing to challenge a consent decree to which he had not agreed and whether he could seek modification of that decree. Because the Attorney General was a party to the decree and the decree was approved over his objections, we held that he had standing to challenge the decree. However, we explained that “he would need to show that the decree adversely affects his interests as Attorney General of Alabama. He could not assert the interests of other parties to the litigation.” Id. at 1517. Likewise, we affirmed the district court’s conclusion that the Attorney General “had no standing to seek to modify the decree in respects that were not prejudicial to the interest of the Attorney General.” Id. at 1518. As Neioman makes clear, the Attorney General’s standing is confined to his own interests; he cannot assert the interests of other parties to the litigation. See also Graddick v. Newman, 453 U.S. 928, 934, 102 S.Ct. 4, 69 L.Ed.2d 1025 (1981) (Powell, J.) (denying stay, to Alabama Attorney General on basis that he lacked standing because, at the time, Alabama statutes vested responsibility over prison system in the Governor, who opposed stay).
I recognize that, even if the Attorney General lacks the authority to terminate the remaining portions of the November 1994 decree, the district court would have the authority to do so sua sponte. See United States v. City of Miami, 2 F.3d 1497, 1506 (11th Cir.1993). However, I believe that the district court should have an opportunity to decide whether it will exercise its discretion to act sua sponte, especially given the fact that its decision on this point will affect the scope of the evidentiary hearing it needs to hold. This follows the same approach we took in Magluta v. Samples, 162 F.3d 662 (11th Cir.1998), where we remanded a case to the district court to permit the district court to decide whether it would dismiss plaintiffs case for failure to comply with the local rules. Id. at 664-65.