Charles JACKSON et al.

v.

Sheriff Arvis WHITMAN et al.

Civ. A. No. 83–2031.

United States District Court,
W.D. Louisiana,
Shreveport Division.

Aug. 15, 1986.

Henry C. Walker, IV, Walker, Tooke, Grubb, Pearlman & Lyons, Shreveport, La., for plaintiffs.

Douglas L. Stokes, Jonesboro, La., for Sheriff Whitman.

Charles Welsh, Asst. Atty. Gen., Bossier City, La., for State of La.

John Blake, Dist. Atty., Jonesboro, La., for Bienville Parish Police Jury.

## MEMORANDUM RULING

STAGG, Chief Judge.

This matter arises out of a class action suit challenging conditions of confinement, practices, policies and procedures of the Bienville Parish Jail. Made defendants are: Sheriff Arvis Whitman, the Bienville Parish Police Jury and the State of Louisiana.

On May 24, 1985, the parties to this case entered into a consent decree which outlined the remedial actions to be taken by defendants to rectify the unconstitutional conditions at the Bienville Parish Jail. The purpose of the consent decree was codified by the parties as follows:

> Although no findings are made by the court because of the settlement by the parties, the decree contemplates and is intended to codify present policy and procedures, and/or corrective measures instituted by defendants, eliminating conditions of confinement which may have denied inmates of the Bienville Parish Jail their rights, privileges, immunities and the equal protection of the law secured to them by the Constitution of the United States of America, the Declaration of Rights of the Louisiana Constitution of 1974 and provisions of Louisiana law pertaining to jails and prisons.

The consent decree addressed the following issues: living quarters, hygiene, food, security, medical and dental attention, punishment for infractions of jail rules, communications, mail and visitation, access to courts, the establishment of a law library, recreation, religion and the posting of the consent decree.

On August 1, 1986, the plaintiff class filed a motion seeking an order to show cause why defendants should not be held in contempt of court. This motion alleged that "all defendants have failed, in varying degrees, to comply with the provisions of the Consent Decree." The sheriff and the Bienville Parish Police Jury filed responses, and on August 11–13, 1986, a hearing was held on the plaintiffs' motion.

For reasons, orally assigned at the close of the testimony on August 13, 1986, Sheriff Whitman, the Police Jury and the State were held in contempt of court for failure to obey court orders. *See Jim Walter Resources v. International Union, UMW,* 609 F.2d 165, 168 (5th Cir.1980). This opinion serves to specify the acts of contempt found by this court and to assess the appropriate sanctions.

Contempt of court is committed when a party "violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *SEC v. First Financial Group of Texas, Inc.,* 659 F.2d 660, 669 (5th Cir.1981). Plaintiffs must prove the alleged contempt by clear and convincing evidence. *NLRB v. Trailways, Inc.,* 729 F.2d 1013, 1017 (5th Cir.1984).

■ "[T]he power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of

the duties imposed on them by law." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450, 31 S.Ct. 492, 501, 55 L.Ed. 797 (1911). This proceeding is one involving civil contempt. Its purpose is "coercive" or "remedial" in that this judgment of contempt is designed to enforce compliance with this court's orders and to compensate the plaintiffs for injury incurred due to the defendants' noncompliance. *See In re Hunt*, 754 F.2d 1290, 1293 (5th Cir.1985); *Smith v. Sullivan*, 611 F.2d 1050, 1053 (5th Cir.1980); *In re Stewart*, 571 F.2d 958, 963 (5th Cir.1978). These proceedings are not for criminal contempt because their purpose is not punitive, and the penalty to be imposed is designed to enforce compliance rather than to vindicate the authority of the court. *Id.* "Since this is a proceeding in civil, not criminal, contempt, the only issue is the [defendants'] actual compliance with this Court's orders; any absence of willfulness is irrelevant." *NLRB v. Trailways, Inc.*, 729 F.2d at 1017. Further, "[i]ntent and good faith, while relevant to the amount of punishment, are not defenses to the charge [of contempt]." *Newman v. Graddick*, 740 F.2d 1513, 1524 (11th Cir.1984).

The plaintiffs have proven by clear and convincing evidence numerous violations of the consent decree by the defendants. This court will follow the outline of the consent decree in enumerating these violations. The actual party in contempt will be cited at the appropriate junctures.

## I. LIVING QUARTERS

Section I regulates the conditions of the living quarters provided for inmates in the Bienville Parish Jail.

### A OVERCROWDING

This subsection directs the sheriff to comply with the limitations on the number of inmates set by the United States District Court for the Middle District of Louisiana. There was no evidence that the jail population exceeded the limit established by the Middle District decree.

### B VERMIN INFESTATION

This subsection required the sheriff to provide "[a]dequate and regular vermin infestation treatment of the *overall* facility...." Additionally the sheriff was to make bi-weekly oral reports to his counsel and counsel for the police jury for a period of two months. At the end of this first two-month period, counsel for the sheriff was then to communicate with counsel for the plaintiff class. None of these reports were made, and counsel for plaintiff was never contacted. The inmates who testified described conditions which indicate that the jail continues to have a serious roach infestation problem. Although regular bi-monthly pest control spraying is conducted in the jail and paid for by the police jury, no spraying is done in the inmates' cells. The spraying is confined to the outer catwalks which encircle these cells and the pipe chase between cell blocks. The State health inspector, Thomas R. Harmon, testified that he did not go inside the cells when making his inspections. The sheriff and the police jury are not in compliance with this provision of the consent decree because the *overall* facility is not subjected to vermin infestation treatments. However, no finding of contempt can be made on this particular provision because the consent decree itself provides: "If, after the two-month period, no solution to the vermin problem has been had, additional steps will be outlined by the Court." This contempt hearing was the first instance in which the infestation problem at the Bienville Parish Jail was presented to the court. However, this court orders the Bienville Parish sheriff and the Bienville Parish Police Jury to comply with the provisions of Section I (B) of the consent decree and further orders that the reports required by this subsection be made, starting immediately. At the end of sixty (60) days, counsel for the sheriff will communicate with counsel for the plaintiff class and, if no adequate solution to the infestation problem has been found, the court then will outline additional steps. Failure to make the required reports will subject the sheriff

and the police jury to possible further contempt citations.

## C HEALTH AND SAFETY REGULATIONS

Subsection (C) governs the health and safety standards of the Bienville Parish Jail. This subsection directs the sheriff, police jury and the State to provide health and safety services in 14 areas:

1. The State of Louisiana, through the Office of the Louisiana State Division of Health, was to submit to the court, with copies to all counsel, a report concerning the jail's compliance with the sanitary code of Louisiana. The sheriff and police jury were obligated to attempt to correct problems shown by the report. No report has been filed with this court. While health inspections were made of the jail, no report has been filed with this court, nor have copies been provided to counsel. Thus, the State is in direct violation of the dictates of the consent decree. The State will be ordered to conduct an immediate and thorough inspection of the Bienville Parish Jail and to provide the court and all counsel with copies of its report within thirty (30) days of the date of this order. Thereafter, in accordance with the consent decree, the sheriff and the police jury will attempt to correct the problems shown by the report within an additional thirty (30) days. Also in accordance with the consent decree, "[a]ny dispute as to what is a reasonable amount of money or physically possible shall be submitted to the Court for resolution of that dispute."

2. The consent decree provided: "Air conditioning and heating facilities are, for these purposes, determined to be adequate as they exist at the present time." The Bienville Parish Jail is cooled by two exhaust fans located in the windows on the west side of the facility. These fans draw air through the jail from open windows located on the east side. Windows on the north side are closed, as are windows on the south side. There was testimony that these windows are closed to provide better circulation. Additionally, the windows on the south side are closed in order to prevent the prisoners from shouting at people in the courthouse parking lot. The plaintiffs allege that the fans have been shut off as punishment to the prisoners, and that the cells have been blocked to prevent air flow. There was evidence that the fans were shut off during visiting hours in order to facilitate communications between the inmates and their visitors. Further, there was testimony that the tray holes in the women's cells, which are rectangular openings measuring 4" $\times$ 12" have been closed. These tray holes were closed to ensure that male prisoners would not be able to view female prisoners. These tray holes may be closed only by the jailers from the outside of the cell. Sheriff Whitman conceded that the closure of these holes "cuts down some" on air circulation in the cells. There was no clear and convincing proof that the fans had ever been shut off as punishment. Nor was there clear and convincing proof that opening the south and north windows would improve circulation in the jail. Accordingly, in accordance with the express provision of the consent decree, this court finds no violations concerning the air conditioning facilities of the jail.

3. This section requires the sheriff and police jury to ensure that any toilets, showers or sinks that need repair or replacement will be immediately fixed or replaced. The evidence shows that, out of three sinks in the cells allotted to the pretrial detainees only one is operative. Approximately 12 inmates must use this single sink for drinking water and for personal hygiene. One of the three toilets in these cells was broken when an inmate fell from his bunk and hit the toilet. This toilet was replaced in two weeks' time. The delay was occasioned by the necessity of obtaining the specialized toilet used in the jail. However, the inmates testified that another of the toilets has a crack in the bowl and leaks on the floor. The health inspector testified that he did not enter the cell and was unable to contradict the inmates' testimony. Further, the inmates testified that the lighting provided at night was inadequate to allow sanitary utilization of the toilets at

night after the jail lights are shut off at approximately 10:00 O'Clock P.M. There was also testimony that the shower stall in the detainees' day room was blackened with mildew. This testimony also went uncontradicted. This court finds the sheriff and the police jury in contempt of court for failure to ensure that all toilets, showers and sinks are operative. While the defendants cannot be faulted for the two-week delay in obtaining the specialized prison toilet, they are to be faulted for their failure to enter the jail cells and inspect the conditions of the other toilets, showers and sinks. The sheriff and the police jury are ordered to repair or replace within thirty (30) days all inoperative or broken toilets, showers and sinks.

4. This section required that the number of brooms, mops and mop buckets is to be substantially increased and should be part of a written and posted plan for regular *and regulated* cleaning of the cell areas. The sheriff testified that mop buckets were not allowed into the cell area; rather, the trustees would stand outside the cells and pass mops in to the inmates through the tray hole. The inmates testified that the trusties performed their duties in a haphazard manner and that the trusties have left mops in the cells overnight. While the testimony revealed that the jail was regularly cleaned, there was no evidence of a *regulated* cleaning. By the admission of the defendants, no mop buckets are provided to the inmates for use in their cells. These constitute violations of the consent decree. The sheriff will be ordered to provide, within thirty (30) days, adequate cleaning supplies to the cell areas for inmate use and will be further ordered to regulate the cleaning of the cell areas to ensure that brooms and mops are not left overnight in the cells.

5. and 6. These sections required the fire marshal for the State of Louisiana to conduct inspections of the Bienville Parish Jail. The fire marshal was to submit a report to the court with copies to all counsel concerning any deficiencies found in the jail. The sheriff and the police jury were to attempt to correct any problems within

thirty (30) days. Although inspections were conducted, no copies were sent to the court or to counsel. This is in direct contravention of the consent decree. The State of Louisiana will be ordered to conduct an inspection of the Bienville Parish Jail within thirty (30) days and to provide a copy of its report to the court and all counsel. The State is further ordered to comply with all other provisions of sections I(C)5 and 6.

7. This section requires that fire extinguishers be installed pursuant to State laws and regulations. One of the inmates testified that he has seen no fire extinguishers in the jail. Apart from this testimony, the exact location of the fire extinguishers in the Bienville Parish Jail is unclear. There simply is no clear and convincing evidence on this point. However, it is expected that the fire marshal, when filing his reports to the court, will specifically address this issue.

8. This section requires that the location of all fire extinguishers be explained in writing to the inmates, together with a clear explanation of the fire drill procedures. There was clear and convincing evidence that this was not done. The sheriff testified that he and his deputies are familiar with the fire drill procedures. No one connected with the sheriff's department testified that the *inmates* understand these procedures or know the location of the fire extinguishers. Failure to provide this information to the inmates is in direct violation of the consent decree. The sheriff will be ordered to explain the location of the fire extinguishers and fire drill procedures to the inmate population, as a whole, within thirty (30) days.

9. This section requires the installation of a smoke alarm system. Smoke alarms are installed in the jail. The inspector of public buildings from the Louisiana State Fire Marshal's Office testified that, during his regular, biannual inspections, he would test one of the fire alarms. His inspection reports, which were introduced into evidence at the hearing demonstrate no viola-

tion. The inmates, however, testified that they did not believe that these smoke alarms were operative. One inmate testified that newspaper would be lit and then placed under the smoke alarm. The inmates would stand on the bars of the inner catwalk and hold the burning paper up to the smoke alarm. He testified that when this was done, the smoke alarms did not ring. This court is unwilling to credit these *ad hoc*, informal experiments conducted by the prisoners. However, the state fire marshal is directed to specifically inspect the sufficiency of the fire alarm system in the report which he must file with this court.

10. This section mandated that the state fire marshal or his designee formulate and provide to the court and counsel an escape plan to be followed in the Bienville Parish Jail. This section further provides that this written escape plan be distributed to each inmate and posted. It also requires that the sheriff have each inmate sign an appropriate form indicating that he has been instructed of and understands the fire escape procedure. The fire marshal has developed no written escape plan for the Bienville Parish Jail. Further, the sheriff has failed to distribute any plan to the inmates and to have each inmates sign an acknowledgment form. Failure to comply with these requirements of the consent decree constitutes a contempt by the State and the sheriff. The fire marshal will be ordered to submit an escape plan to the court and counsel within thirty (30) days. Thereafter, the sheriff will be ordered to distribute a copy to each inmate and to design an appropriate form for each present inmate and all future inmates to sign, indicating that he has been instructed in an understands the fire escape procedures.

11. This section requires that the fire marshal provide to the court and to counsel a report on the installation and location of emergency lighting sources, fire safety exits, and any other exits in the Bienville Parish Jail. No such report has been filed. In fact, it appears that no detailed investigation of emergency lighting sources has occurred at the jail. The state fire inspector, when asked whether the emergency illumination was disconnected when the main jail lights were turned out, responded that he "wouldn't know." The failure to provide this report is in direct contravention of the consent decree. The fire marshall will be ordered to provide this report to the court within thirty (30) days and is specifically directed to assess the workings of the emergency lighting energy sources.

12. This section requires that all guard personnel be familiar with fire escape and drill plans. The sheriff is additionally required by this section to a report to all counsel that the guards have been so instructed. No such report has been made, and it is unclear whether all guards are familiar with the drill plans. The failure to make this report constitutes a violation of this consent decree and the sheriff is ordered to file this report certifying that all guards are familiar with fire escape and drill plans within thirty (30) days.

13. and 14. No violations of these provisions have been alleged.

## D SCHEDULE OF COMPLIANCE

This subsection provides: "All parties to this suit shall, within 10 days from the date of this decree, be provided a schedule which provides for the implementation of the provisions of subparts B, C.3. and 4., above." No schedule concerning eradication of the infestation problem, the repair or replacement of toilets, showers or sinks, or the establishment of a regular and regulated cleaning plan has been submitted. This constitutes a violation of the consent decree. The sheriff is directed to supply this schedule within thirty (30) days.

## II. HYGIENE

### A PROVISIONS

This section provides that each prisoner shall be regularly provided: a mattress cover, pillow, blanket, soap, toilet paper and towels, and clean clothing upon being booked into the facility. Indigent prisoners

are to be provided: underwear and toilet articles (including toothbrush, toothpaste and shampoo). These items are to be provided at the police jury's expense. The sheriff admits that no pillows have been provided to the inmates and that no underwear or toilet articles have been provided to indigent inmates. The only defense was that no one had requested underwear or toilet articles. In light of this court's finding, *infra*, that the consent decree was not posted where it could be read by the inmates, the failure of the inmates to request such articles in no way mitigates this violation of the court's orders. One inmate testified that he was arrested while wearing only a pair of shorts. He had no shoes at that time. That inmate spent two weeks in the Bienville Parish Jail before he was provided additional clothing and shoes by his family. There has been a direct violation of this provision of the consent decree. The sheriff and the police jury will be ordered to fully comply with this provision of the consent decree within thirty (30) days.

## B BATHING

This subsection requires the sheriff to have every prisoner bathe upon entering the jail and further provides for additional bathing opportunities during incarceration. The sheriff admits that he has not compelled every prisoner to bathe upon entering the jail. He stated, however, that he intends to comply with this provision in the future. The sheriff's past failure to comply with this provision constitutes a violation of this consent decree. Failure to comply in the future will also be a violation. The sheriff is ordered to begin requiring every prisoner to bathe upon entering the jail, beginning immediately.

## III. ADEQUATE FOOD

### A COMPLIANCE WITH STATE LAW

This subsection requires that all food be prepared and served in compliance with state law. There was no allegation that this section has been violated.

## B REVIEW BY DIETITIAN

This section requires that the menus for the meals served to the inmates be reviewed by the Bienville Parish school dietitian. The sheriff admits that this review was not conducted until plaintiffs' motion to compel was filed. The past violation constitutes a contempt of court for failure to obey court orders. Any future failure to have the menu regularly reviewed by a dietitian will also constitute a contempt of court, and the sheriff will be ordered to fully comply with provisions of this subsection.

## C WITHHOLDING OF FOOD

This subsection explicitly provides that the withholding of food may not be utilized as a disciplinary measure. The sheriff testified that he withheld food from the sentenced inmates for failure to clean their cells. The consent decree has other provisions for punishment of the prisoners; however, these procedures were not followed. The withholding of food to force the inmates to clean their cell constitutes a violation of the consent decree entered into by the sheriff. This constitutes a contempt of court. The sheriff will be ordered to fully comply with this subsection, beginning immediately.

## D SPECIAL DIET

This subsection provides that any prisoner on a special diet, as authorized by a licensed physician, will have his meals prepared in accordance with that diet. There was no clear and convincing evidence that this subsection has been violated, although Sheriff Whitman, in his testimony, demonstrated a marked indifference to the needs of an inmate who was known to have a stomach ulcer. The sheriff is reminded that any future violations of this provision will constitute contempt of court.

## IV. SECURITY

### A INMATE CLASSIFICATION

This subsection requires the sheriff to classify and segregate pretrial detainees,

those persons "who appear susceptible to physical or other abuses, including sex offenders and persons with apparent mental retardation or mental illness," those persons suffering from known communicable diseases, males from females, and juveniles from adults. The evidence demonstrated that pretrial detainees are separated from convicted inmates; males are separated from females and adults from the juveniles. The inmates testified that, in their opinion, several individuals who apparently suffer mental deficiencies have not been segregated from the other inmates. Further, the sheriff has failed to require the inmates to fill out a medical questionnaire upon entering the jail as required by the consent decree. *See infra.* Accordingly, it is difficult to determine whether the sheriff has complied with the segregation requirements for an inmate suffering communicable diseases. This court is unwilling to credit the untrained, lay testimony of the inmates concerning other inmates whom they feel suffer from mental retardation. Accordingly, no contempt of court is found on this particular subsection. However, the sheriff is cautioned that any future violation of his requirement to classify and segregate inmates will constitute a contempt of court.

### B VISUAL SEPARATION OF FEMALES

This subsection requires that all female and juvenile housing units be removed from the sight of the male inmate population and from each other. Although there was a great deal of controversy concerning whether the pretrial detainees could view the female inmates, as well as controversy concerning whether inmates are permitted to walk past the women's cell, the testimony of the sheriff and his deputies clearly demonstrates that at least some of the male population is able to view the female inmates through their tray holes. Various deputies testified to the disciplinary prob-

lems caused by the ability of the male inmates to see the female inmates. The fact that the male inmates can see the female inmates constitutes a violation of this consent decree.[1] The sheriff will be ordered to devise a system to visually separate these two populations within thirty (30) days.

### C GUARDS

This subsection provides that the sheriff shall have on duty at all times at least two guards. One of these guards may be attending the radio room "provided that the guard shall at all times be viewing a video monitor which provides both visual and audio contact with the jail." The testimony of Sheriff Whitman demonstrates that at least one jailer is present on the jail floor. However, his testimony made clear that the second guard required by the consent decree was not in compliance. This guard sits in the radio room and looks at a video monitor which looks down the main hallway of the jail. This video monitor does not scan the cells. Further, there is no audio contact with the jail. The sheriff testified that the guard in the radio room has an intercom to the kitchen, where the jailer is located when not patrolling. There is no direct audio contact with the portion of the jail where the inmates are located. This is in direct violation of the consent decree. The sheriff will be ordered to establish audio contact between the second guard located in the radio room and the jail within thirty (30) days.

### D PATROLLING

This subsection requires the guards to patrol the entire facility at least twice per hour. Every deputy who testified stated that he patrolled the facility once an hour. This constitutes a direct and plain violation of the consent decree. The sheriff will be ordered to comply with this provision immediately.

1. There was considerable testimony (and more considerable publicity) concerning alleged sexual abuse and sex-for-favors in the Bienville Parish Jail. In light of the fact that there is an ongoing investigation into these allegations and that a final determination of these claims is not necessary in this contempt proceeding, no ruling on these allegations will issue at this time.

## E SEARCHES

There was no violation of this subsection alleged by the plaintiffs.

## F TRUSTY STATUS

This subsection requires the sheriff to adhere to written, nondiscriminatory policies and procedures in selecting trusties. The sheriff has admitted that this subsection of the consent decree has been violated. The sheriff will be ordered to comply with this section and develop and employ written, nondiscriminatory policies and procedures for the attainment of trusty status, and shall do so within thirty (30) days.

## V. MEDICAL ATTENTION

### A PROCEDURE

This subsection requires all prisoners to be provided with access to sick call procedures, including access to medical complaint forms. The sheriff admitted that the inmates are not given access to medical complaint forms. He testified that all complaints are relayed to him through the jailers or the trustees. This personal relay system is not sanctioned by the consent decree. Failure to provide medical complaint forms and sick call procedures constitutes a contempt of court. The sheriff will be ordered to comply with this subsection and to provide adequate sick call procedures as well as medical complaint forms within thirty (30) days.

### B TREATMENT

This subsection requires that any prisoner complaining of a medical problem be taken to see a physician, dentist or registered nurse. The testimony of the inmates demonstrated by clear and convincing evidence that the treatment of their medical complaints was haphazard at best. The sheriff will be ordered to fully comply with the provisions of this subsection within thirty (30) days.

### C EMERGENCIES

There was no allegation that the sheriff has failed to comply with the consent decree as it concerns medical emergencies.

## D RECORD OF COMPLAINTS

This subsection requires that a record be kept concerning prisoner medical complaints. It is to list the complaint, the resolution of the medical problem, and whether the problem was resolved on or off premises. No such log is maintained by the sheriff. This failure constitutes a breach of the consent decree. The sheriff will be ordered to comply with this subsection, beginning immediately.

## E PRESCRIPTION DRUGS

This subsection requires that prescription drugs be provided for indigent prisoners at the expense of the Bienville Parish Police Jury. It further provides for a proper recordation of drugs administered. No log is kept concerning prescription drugs. This constitutes a violation of the consent decree. The sheriff will be ordered to keep a proper log of prescription drugs administered to the prisoners, beginning immediately.

## F MEDICAL QUESTIONNAIRE

This subsection requires the sheriff to have every inmate fill out a medical questionnaire upon entering the facility. The sheriff admits that this has not been done. This constitutes a breach of the consent decree. The sheriff will be ordered to fully comply with this requirement, beginning immediately.

## G ADMISSION OF THE MENTALLY ILL

## H GUARDS' FIRST AID TRAINING

There were no violations of these subsections alleged or proven at the hearing.

## I DENTAL CARE

This subsection obligates the sheriff to provide "proper professional treatment of inmates' dental ailments." The testimony, as well as the dental bills submitted by the police jury, demonstrate that prisoners suffering dental ailments have the affected

teeth extracted. No bills submitted showed any instance where filling or other care occurred. The parties were ordered during the hearing to submit a supplemental order establishing a policy that will prohibit the extraction of any inmate's teeth when repair is appropriate. There was no evidence at the hearing showing that extraction was inappropriate treatment; therefore, no finding of present violations can be made.

## VI. PUNISHMENT

This section requires that a jail handbook be given to each inmate and to each new inmate entering the jail. This handbook is to contain rules and regulations and the procedures for administrative punishment. Plaintiffs have proven by clear and convincing evidence that the handbooks have not been distributed in accordance with the requirements of this consent decree. Each jailer who testified described a different policy to be used in distributing the handbooks. Further, the handbook submitted into evidence contains no description of the rules and regulations of the jail and contains no provisions for administrative punishment. The provisions of this section of the consent decree have been violated. The sheriff is ordered to develop a handbook in compliance with this consent decree and to distribute this handbook to each inmate within thirty (30) days. Each new inmate will receive a copy upon entering. This handbook must be in compliance with all of the requirements contained in the consent decree. A record will be kept, signed by the inmate and a guard, showing receipt of the handbook.

## VII. COMMUNICATIONS

### A MAIL AND PACKAGES

This subsection requires the sheriff to devise written jail policies and procedures concerning privileged and nonprivileged mail, incoming packages and communications between the inmates and their attorneys. The handbook submitted into evidence demonstrates that the written policies and procedures are not in compliance

with the requirements of the consent decree. No procedures have been established to challenge the censorship of mail. No log of all incoming and outgoing mail has been established. Telephone conversations between inmates and their attorneys are not made from positions of privacy to safeguard the attorney-client privilege. All phone calls are made by bringing a telephone to the inmate in the cell area. Any conversation may be overheard by cellmates, the jailer bringing the phone, or someone picking up on that line in the sheriff's office. Prisoners are not allowed to phone an attorney at any time during normal business hours. Inmates are limited to a single three-minute phone call once a week on Wednesdays. The prisoner in need of contacting an attorney must use this one opportunity to call his attorney.

Visitation procedures are not in compliance with the consent decree. Subsection C–3 requires that the visitation take place "in such a location and manner which provides reasonable privacy, visual contact and an ability to adequately communicate." Visitation is currently conducted through solid walls with one view hole and one hole which allows verbal communication. These are direct violations of the consent decree. The sheriff will be ordered to comply with the provisions of this section concerning mail, communications between inmates and attorneys, and visitation within thirty (30) days.

## VIII. ACCESS TO THE COURTS

Violations of subsections B, D and G were alleged by the plaintiffs:

### B LAW LIBRARY

This subsection requires the Bienville Parish Police jury to furnish a law library and specifies the materials that must be provided in that library. The police jury admits that no *Federal Reporter 2d Edition* (1970 to present) has been provided as required by the consent decree. The provision of the other books required by the decree is unclear. This consent decree is 14 months old, and the failure to have provided the *Federal Reporter* is inexcusa-

ble. · The police jury will be ordered to supply *all* materials required by the consent decree in the law library within thirty (30) days.

### D PROVISIONS

The consent decree requires that all indigent inmates be provided paper, pens, envelopes, stamps and notarial services for all correspondence and pleadings to be sent to any attorney or to any court. The police jury is to pay for these materials and services, and the sheriff is responsible for providing them to the inmates. This subsection also provides that inmates will be allowed to use their own typewriters. The evidence clearly demonstrated that the inmates were not informed of their right to these services and that these services and materials were not supplied. There was further uncontradicted testimony that one inmate was not allowed to use his typewriter until after the filing of this motion. All of these activities constitute direct violations of the consent decree. The sheriff and the police jury will be ordered to comply with these provisions beginning immediately.

### G PHOTOCOPYING SERVICES

This subsection provides for photocopying services for inmates under certain circumstances and restrictions. The evidence clearly demonstrated that the inmates were unaware of their right under the consent decree concerning photocopying and that none of these services have, in the past 14 months, been provided. The failure to make these services available to the inmates constitutes a breach of this consent decree. The sheriff and the police jury will be ordered to comply with the provisions of this subsection and make reasonable arrangements for photocopying services in compliance with this decree with thirty (30) days.

### IX. RECREATION
### XI. RELIGION

No violations are alleged concerning these provisions. Through typographical error, there is no X.

### XI. POSTING OF DOCUMENTS

The sheriff is required by this section to post a copy of the consent decree "in such a manner that each page can be read by every inmate." Alternatively, the sheriff is allowed to include a copy of the consent decree in the inmates' handbook. The consent decree does not appear in the handbook. The sheriff·testified that it had been posted on the jail doors leading to the courtroom. These doors are far removed from the cell area. The prisoners are not allowed free access to this area. It is clear that this consent decree has not been publicized to the inmates of the Bienville Parish Jail. Two inmates testified that they knew nothing of the consent decree until counsel for the plaintiff class visited the jail. The failure properly to post the consent decree constitutes a direct and flagrant violation of the requirements of that document. The sheriff will be ordered to post a copy of the consent decree in a place where each page can be read by every prisoner immediately or, alternatively, shall furnish a copy of the decree, along with the handbook, as is provided in VI, above. The sheriff will be further ordered to comply with the provisions of this section.

### CONCLUSION

 Having found that defendants violated the consent decree entered on May 24, 1985, it is ordered that Sheriff Arvis Whitman, the Bienville Parish Police Jury and the State of Louisiana are in civil contempt of this court's order.

The court now must address the issue of sanctions to be imposed in this case. The proper goal of civil contempt sanctions is full remedial relief. *Florida Steel Corp. v. NLRB*, 648 F.2d 233 (5th Cir.1981). The only limit upon the sanctions which may be imposed "is that they be remedial or coercive but not penal." *Id.* (citing *Lance v. Plummer*, 353 F.2d 585 (5th Cir.), *cert. denied*, 384 U.S. 929, 86 S.Ct. 1380, 16 L.Ed.2d 532 (1965)). The plaintiffs urge this court to impose a fine of $10,000

against each defendant and fines of $1,000 per day for each additional day of noncompliance. "The imposition of prospective fines is an extraordinary remedy to be imposed only where violations have been flagrant and lesser remedies appear to fail." *NLRB v. Trailways,* 729 F.2d at 1023. Under the applicable jurisprudence, it is clear "that the standard to be employed in deciding whether or not to impose a compliance fine is whether such fine is necessary to 'coerce the contemnor into compliance with [the] court's order.'" *Florida Steel Corp.,* 648 F.2d at 240 (quoting *NLRB v. Vander Wal,* 316 F.2d 631, 634 (9th Cir.1963)).

■ The violations of the consent decree in this case were flagrant and pervasive. There were over 35 individual violations. This court makes the specific finding that fines are necessary to coerce the defendants into compliance with this court's orders as embodied in the consent decree entered on May 24, 1985. It shall be ordered that defendant, Arvis Whitman, be fined $7,500; that defendant, Bienville Parish Police Jury, be fined $2,500; and that defendant, the State of Louisiana, be fined $2,500. It shall be ordered that each defendant be fined $1,000 for any additional days that that defendant is not in substantial compliance with this court's orders. However, these fines must be tempered by the fact that they are issued in conjunction with civil contempt proceedings. "Since contempt is a conditional sanction, the person in civil contempt must be given the opportunity to bring himself into compliance." *Newman v. Graddick,* 740 F.2d at 1524–25. In civil contempt proceedings, "the 'penalty' is automatically lifted on compliance." *Thyssen, Inc. v. S/S Chuen On,* 693 F.2d 1171, 1173 (5th Cir.1982). Accordingly, this court additionally orders that the defendants be allowed the time periods specified in this ruling and accompanying judgment within which to comply with the provisions of the consent decree and thereby purge themselves of contempt. In that event, this court may quash this contempt citation and revoke the fine. However, if defendants fail to purge themselves of contempt within the specified time, this court will not revoke the fines or quash the citation, and will impose the additional daily fine of $1,000 for each day that each defendant is not in substantial compliance, as ordered above.

■ The defendants are further ordered to pay to the plaintiff class all costs and expenses, including reasonable attorney's fees, incurred in the investigation, preparation, presentation and final disposition of this contempt proceeding. The amount of these expenses, unless agreed upon by the parties, shall be fixed by the court upon submission of a certified statement of such costs and expenses. These costs will be divided: 70 per cent to defendant, Sheriff Whitman; 15 per cent to defendant, Bienville Parish Police Jury; and 15 per cent to the State of Louisiana.

A judgment consistent with the terms of this memorandum ruling shall issue herewith.

### JUDGMENT

For the reasons assigned in the foregoing Memorandum Ruling and after the issues having been duly heard and a decision having been duly rendered,

IT IS ORDERED AND ADJUDGED that defendants Arvis Whitman, the Bienville Parish Police Jury, and the State of Louisiana are in contempt of court.

IT IS FURTHER ORDERED that Arvis Whitman, the Bienville Parish Police Jury and the State of Louisiana shall purge themselves of contempt by:

1. Providing adequate vermin infestation of the overall jail facility and providing, within sixty (60) days, the report to plaintiffs' counsel required by the sheriff in section I.B. of the consent decree;

2. Providing reports to the court and counsel, within thirty (30) days, of the compliance with the Louisiana Sanitary Code as required of the state in section I.C.1 of the consent decree, with an additional report due thirty (30) days later;

3. Repairing or replacing, within thirty (30) days, toilets, showers or sinks as re-

828

quired of the sheriff and the police jury by section I.C.3. of the consent decree;

4. Providing, within thirty (30) days, adequate cleaning supplies and a written and posted plan for regular and regulated cleaning of the cell areas as required of the sheriff by section I.C.4. of the consent decree;

5. Conducting inspections, within thirty (30) days, for fire safety compliance as required by the Louisiana fire marshal under sections I.C.5. and 6. of the consent decree;

6. Explaining, within thirty (30) days, the location of fire extinguishers and fire drill procedures to the inmates as required of the sheriff by section I.C.8. of the consent decree;

7. Providing, within thirty (30) days, an escape plan as required of the Louisiana fire marshal by section I.C.10. of the consent decree;

8. Having, within thirty (30) days, each inmate and all future inmates sign a form indicating that he or she has been instructed in and understands the fire escape procedures as required of the sheriff by section I.C.10. of the consent decree;

9. Providing, within thirty (30) days, a report on the installation of emergency lighting sources and fire safety exists as required of the Louisiana fire marshal by section I.C.11. of the consent decree;

10. Reporting within thirty (30) days that all guard personnel have been instructed on fire drill and escape plans, as required of the sheriff by section I.C.12. of the consent decree;

11. Providing, within thirty (30) days, a schedule of compliance, as required of the sheriff by section I.D. of the consent decree;

12. Providing, within thirty (30) days, every inmate with a pillow and each indigent inmate with hygiene articles, as required of the sheriff and the police jury by section II.A. of the consent decree;

13. Compelling every prisoner to bathe upon entering in jail, beginning immediately, as required of the sheriff by section II.B. of the consent decree;

14. Having the inmates' menus regularly reviewed by the Bienville Parish school dietitian, as required of the sheriff under section III.B. of the consent decree;

15. Refraining from withholding food as punishment, beginning immediately, as required of the sheriff by section III.C. of the consent decree;

16. Removing, within thirty (30) days, the female and juvenile inmates from the sight of the male inmate population, as required of the sheriff by section IV.B. of the consent decree;

17. Providing, within thirty (30) days, both visual and audio contact with the jail for the radio room guard, as required of the sheriff by section IV.C. of the consent decree;

18. Patrolling the entire facility at least twice per hour, begining immediately, as required of the sheriff by section IV.D. of the consent decree;

19. Providing, within thirty (30) days, written, nondiscriminatory procedures for attaining trusty status, as required of the sheriff by section IV.F. of the consent decree;

20. Providing, within thirty (30) days, sick call procedures and inmate complaint forms, as required of the sheriff by section V.A. of the consent decree;

21. Complying within thirty (30) days, with the obligation to take inmates with medical problems to see a licensed physician, dentist or registered nurse, as required of the sheriff and police jury by section V.B. of the consent decree;

22. Maintaining a log of inmate medical complaints, beginning immediately, as required of the sheriff by section V.D. of the consent decree;

23. Maintaining a log of prescription drugs, beginning immediately, as required of the sheriff by section V.E. of the consent decree;

24. Requiring each inmate to complete a medical questionnaire upon entering the

jail, beginning immediately, as required of the sheriff by section V.F. of the consent decree;

25. Providing proper professional dental treatment and refraining from extracting treatable teeth, as required of the police jury under section V.I. of the consent decree;

26. Furnishing, within thirty (30) days, a prisoner handbook in compliance with, and as required of, the sheriff by section VI of the consent decree and establishing a log to be signed by both the inmate and a guard showing receipt of the handbook;

27. Establishing, within thirty (30) days, written procedures for mail privileges, as required of the sheriff by section VII.A.1.–4. of the consent decree;

28. Providing, within thirty (30) days, adequate protection of the attorney-client privilege during phone conversations and personal visits, as required of the sheriff by section VII.A.5. of the consent decree;

29. Establishing, within thirty (30) days, a log of incoming and outgoing mail, as required of the sheriff by section VII.A.7. of the consent decree;

30. Permitting, within thirty (30) days, inmates to telephone an attorney during business hours, as required of the sheriff by section VII.A.9. of the consent decree;

31. Permitting, within thirty (30) days, inmates to receive legal business telephone calls, as required of the sheriff by section VII.B. of the consent decree;

32. Providing, within thirty (30) days, adequate privacy and visual contact during visitations, as required of the sheriff by section VII.C.3. of the consent decree;

33. Providing, within thirty (30) days, all the material ordered to be present in the inmate law library, as required of the police jury by section VIII.B. of the consent decree;

34. Providing supplies to indigent inmates, beginning immediately, as required of the sheriff and police jury by section VIII.D. of the consent decree;

35. Providing, within thirty (30) days, photocopying facilities, as required of the sheriff and police jury by section VIII.G. of the consent decree;

36. Immediately posting the consent decree in such a manner and location that every page may be read by each inmate, as required of the sheriff by section XII of the consent decree or, alternatively, furnishing a copy of the decree along with the handbook, as provided in section VI of the consent decree;

IT IS FURTHER ORDERED that defendant Arvis Whitman pay Seven Thousand Five Hundred Dollars ($7,500); that defendant Bienville Parish Police Jury pay Two Thousand Five Hundred Dollars ($2,500), and that defendant State of Louisiana pay Two Thousand Five Hundred Dollars ($2,500) as fines to the plaintiff class as compensation for continuing constitutional detriment suffered by the inmates and each defendant pay an additional daily fine of One Thousand Dollars ($1,000) for every day that defendant is not in substantial compliance with the consent decree;

IT IS FURTHER ORDERED that the defendants may purge themselves of contempt by complying with the consent decree and this judgment within the time periods specified in this judgment and the memorandum ruling, and that, in the event of compliance, this court may quash this contempt citation and revoke the fines;

IT IS FURTHER ORDERED that defendants pay the plaintiff class all costs and expenses, including reasonable attorney's fees, incurred in the investigation, preparation, presentation and final disposition of this contempt proceeding. The amount of these expenses, unless agreed upon by the parties, shall be fixed by the court upon submission of a certified statement of such cost and expenses. These costs will be divided: 70 percent to defendant Sheriff Whitman; 15 percent to defendant Bienville Parish Police Jury; and 15 percent to the State of Louisiana.