**SIGNAL DELIVERY SERVICE, INC.**

v.

**HIGHWAY TRUCK DRIVERS & HELPERS LOCAL NO. 107. et al.**

**Civ. A. No. 72-1176.**

United States District Court,
E. D. Pennsylvania.

Sept. 2, 1975.

John W. Pelino, Philadelphia, Pa., for plaintiff.

Howard J. Casper, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

Presently before the Court is the defendants' appeal, pursuant to Local Rule 38(b) of this Court, from the taxation of costs imposed by the Clerk of Court in the above captioned matter.

This case had its origin in a two-count complaint, filed on Friday, June 16, 1972. In Count No. I of the complaint the plaintiff sought to enjoin the defendant union from submitting a grievance for rearbitration of the issue of payment of "checker's wages" to "platform employees", on the ground that the issue had already been decided in favor of the plaintiff under the grievance machinery of the collective bargaining agreement in two prior identical cases. In Count No. II of the complaint, the plaintiff sought to enjoin a threatened strike which the defendant union had announced would take place because of the plaintiff's alleged failure to comply with an arbitration decision regarding reassignment of non-bid employees. The Court held an emergency hearing on Saturday, June 17, 1972 and on that same day immediately after the hearing, the Court granted the relief requested in Count No. II by preliminarily enjoining the threatened strike and ordering arbitration of the issue concerning which the strike was threatened. The hearing on the issue raised in Count No. I of the complaint was continued by agreement of the parties until June 23, 1972. Despite the Court's Order enjoining the strike, the defendant union struck on June 18, 1972. The plaintiff immediately thereafter filed a petition to hold the defendants in contempt for failure to comply with the injunction. The matter of the contempt petition was heard at the same time as the issue raised in Count No. I of the complaint. On June 27, 1972, the Court adjudged the defendant Louis Bottone, the President of the Union, in contempt of court for violation of the Court's June 17th Order enjoining the strike. The Court fined Louis Bottone $1,000.00. On June 30, 1972, the Court, in a written opinion, ruled on the issue contained in Count No. I by denying the plaintiff's request to enjoin

the defendant union from proceeding with an arbitration on the issue of payment of "checker's wages" to a "platform employee". The defendants appealed the Order enjoining a strike and the Order finding the President of the union in contempt. The plaintiff, however, did not appeal the Court's refusal to enjoin arbitration in connection with Count No. I of the complaint. Our Court of Appeals, on June 4, 1973, held that the appeals were without merit and affirmed the Orders of this Court enjoining the strike and finding the President of the union in contempt.

On July 23, 1973, the plaintiff submitted its verified Bill of Costs in the amount of $8,435.58, which amount included the following five items: (1) $15.00 filing fee; (2) $255.08 as costs taxed by the Circuit Court of Appeals for printing briefs on appeal; (3) $465.00 for transcription of the notes of testimony; (4) $200.00 for two injunction bond premiums; and (5) $7,500.00 for attorneys' fees in connection with the representation of the plaintiff in the District Court and Circuit Court of Appeals.[1]

The Clerk of Court held a hearing for the purpose of determining the amounts which should be taxed as costs against the defendants. He ordered the parties to file briefs concerning the demand of the plaintiff for attorneys' fees. The Clerk of Court upon a review of the affidavits filed, the briefs and arguments of counsel, taxed costs in the amount of $8,435.58 as requested by the plaintiff. In his written opinion, the Clerk of Court set forth a most comprehensive analysis of the issue of attorneys' fees as taxable costs and concluded that the facts of this case warranted the taxation of $7,500.00 in attorneys' fees against the defendants. The defendants moved for a review by this Court of the Clerk's Order taxing costs and specifically request this Court to strike the award of attorneys' fees.[2]

■ The only issue for our determination is whether the attorneys' fees incurred by the plaintiffs in this action can properly be taxed as costs.[3] Rule 54(d) of the Federal Rules of Civil Procedure provides:

> Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day's notice.

---

1. Although plaintiff avers his costs as $8,435.58, an addition of the individual items totals $8,435.08.

2. The defendants in their Motion for Review of the Clerk's Taxation of Costs stated:
 Defendant moves the court to review the taxation of costs in this matter . . . and to retax and strike out the following items allowed as costs by the clerk:
 1. Attorneys' fees granted to plaintiff's counsel in the amount of $8,180.50 for reasons previously filed with the clerk including inter alia that attorney's fees are not proper on this record.
 The sum of $8,180.50 recited by the defendants includes more than the $7,500.00 requested by the plaintiff as attorney fees and apparently includes the $465.00 for the transcription of the notes of testimony, the $15.00 filing fee and the $200.00 injunction bond premiums. Since $465.00 for the transcription of the notes of testimony and the $15.00 filing fee are clearly recoverable as costs, 28 U.S.C. § 1920, and since at the hearing before the Clerk the defendants had no objection to the $255.08 for printing costs in the Circuit Court of Appeals, these amounts are not now in issue. Similarly, the $200.00 for insurance bond premiums are not in issue since defendants presently oppose only the taxation of attorney fees and since the injunction bond premiums are properly taxable as costs as found by the Clerk of Court. 6 *Moore's Federal Practice* ¶ 54.77[8].

3. The defendants have filed a Motion to Strike Plaintiff's Memorandum in Support of the Taxation of Attorneys' Fees as Cost. This Motion is merely a repetition of previous filings by the defendants in support of their position and will be treated as such.

On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

The law requires that a review of the Clerk's taxation of costs be a de novo determination addressed to the sound discretion of the Court. *Farmer v. Arabian American Oil Company,* 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964); *American Steel Works v. Hurley Construction Company,* 46 F.R.D. 465 (D. Minn.1969).

The question of the award of attorney fees to a successful litigant has been considered in several recent cases. The Supreme Court in *Hall v. Cole,* 412 U.S. 1, at pages 4–6, 93 S.Ct. 1943, at page 1945–47, 36 L.Ed.2d 702 (1973), a case arising under the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 412, discussed at great length the principles governing the award of attorneys' fees to a successful litigant and stated:

> Although the traditional American rule ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require. Indeed, the power to award such fees "is part of the original authority of the chancellor to do equity in a particular situation," . . . and federal courts do not hesitate to exercise this inherent equitable power whenever "overriding considerations indicate the need for such a recovery." (Citations omitted.)
>
> . . . . . .
>
> Thus, it is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." . . . In this class of cases, the underlying rationale of "fee shifting" is, of course, punitive, and the essential element in triggering the award of fees is therefore the existence of

"bad faith" on the part of the unsuccessful litigant. (Citations omitted.)

> Another established exception involves cases in which the plaintiff's successful litigation confers "a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." . . . "Fee shifting" is justified in these cases, not because of any "bad faith" of the defendant but, rather, because "[t]o allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the other unjustly at the plaintiff's expense. (Citations omitted.)

Even more recently in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), after a detailed discussion of the origin and development of the "American Rule", the Supreme Court reaffirmed the above quoted principles.

Our Third Circuit in *Goode v. Rizzo,* 506 F.2d 542, 549 (3d Cir. 1974), in the context of a civil rights action, recently stated:

> Even if statutory authority is lacking, in the exercise of their equitable powers federal courts may áward attorneys' fees when the interest of justice so requires. *Hall v. Cole,* 412 U. S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). Although the rule is broadly stated, in application the power is generally exercised in three categories:
>
> 1. Where there has been bad faith, vexation, or oppression. In this class of cases, the punitive aspects predominate. *See, e. g., Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); *Monroe v. Board of Commissioners of City of Jackson,* 453 F.2d 259 (6th Cir. 1972).

2. Where a common fund has been created, or closely analogous to this, where a definable class benefits from the litigation and an award enables the court to spread the expense among all who benefit. *E. g., Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). *Cf. Brewer v. School Board of City of Norfolk*, 456 F.2d 943 (4th Cir.), *cert. denied* 406 U.S. 933, 92 S.Ct. 1778, 32 L.Ed.2d 136, *sub. nom.* 409 U.S. 892, 93 S.Ct. 109, 34 L.Ed.2d 149 (1972).

3. Where the private attorney general theory may have application—that is, where the litigation was instituted to vindicate a policy granted a high priority by a congressional action. *See, e. g., Lee v. Southern Home Sites Corp.*, 444 F.2d 143 (5th Cir. 1971).[4]

Likewise, as to taxation of attorneys' fees, are *United States Steel Corp. v. EEOC*, C.A. No. 74–2183 (3d Cir. filed June 16, 1975); *Lichtenstein v. Lichtenstein*, 481 F.2d 682 (3d Cir. 1973).

Since there is no applicable statutory or contractual authorization for the award of attorneys' fees in this case, we must consider, as did the Clerk of Court, whether the requested attorneys' fees fall within an exception to the general rule that the prevailing party is not entitled to attorneys' fees as an item of taxable costs.

 The exception to the "American Rule" categorized as the "common benefit" exception, spreads the cost of litigation to those persons benefiting therefrom. This litigation was initiated by a single plaintiff on its own behalf; the outcome of the litigation did not effect any particular class of persons. The "common benefit" exception is therefore not applicable.

 The Clerk of Court found that the defendants acted in bad faith, vexa-

tiously, wantonly and for oppressive reasons and on this basis concluded that the plaintiff was entitled to attorneys' fees. We do not, however, concur with his finding that the conduct of the defendants warrants shifting to them the entire amount of attorneys' fees incurred by the plaintiff in this litigation.

As previously stated, the complaint contained two Counts. The first Count sought to enjoin the defendants from rearbitrating an issue which plaintiff contended had been previously arbitrated in favor of plaintiffs. Count No. II sought to enjoin the defendants from a threatened strike. Count No. I of the complaint contended that the union was attempting to rearbitrate the issue of payment of "checker's wages" to "platform men" which issue had allegedly twice previously been decided against the union. The plaintiff contended that the prior decisions of the arbitrator precluded the union from initiating another grievance procedure concerning the same issue, and sought an injunction to that effect. The union's position was that the grievance raised the issue of whether a particular platform man was entitled to "checker's pay" for work performed on May 16, 1972. The Court refused to enjoin the arbitration on the ground that the issue was not identical with the two previously decided grievances and the Court found for the defendants on this issue. We do not find, therefore, that the defendants acted in bad faith, vexatiously, wantonly, or for oppressive reasons in connection with the issue concerning Count No. I.

With regard to Count No. II of the complaint, the union claimed that it had a right to strike because the plaintiff allegedly failed to comply with an arbitration award rendered in favor of the union concerning the reassignment of "non-bid" employees. It was the union's position that the company refused to

4. But see *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

reassign "road alternates" who in the union's view were "non-bid" employees and should have been reassigned in accordance with a prior arbitration decision that "non-bid" employees be reassigned in reverse order of seniority. The company contended that "road alternates" were bid employees and did not fall within the arbitrator's decision. At the conclusion of the hearing, the Court found that this particular arbitrator's decision was "susceptible to both interpretations" and was "thus ambiguous" and that the grievance machinery of the collective bargaining agreement should be permitted to operate so as to resolve the ambiguity. Although this Court granted the relief requested by the plaintiff in Count No. II by enjoining the threatened strike concerning this issue, we do not find that the defendants acted in bad faith, vexatiously, wantonly, or for oppressive reasons up to this point in the litigation. Accordingly, the award of attorney's fees for activities surrounding this phase of the case would be an inappropriate departure from the traditional "American Rule".

As we heretofore pointed out immediately after the emergency hearing which took place on Saturday, June 17, 1972, the Court enjoined the threatened strike. Despite the Court's order, the defendant union struck on June 18, 1972. As determined by the Court in its order of June 27, 1972, the President of the union was adjudged in contempt of the no-strike order and fined $1,000.00. As to the contempt phase of this litigation, we are in complete agreement with the findings of our Clerk of Court that the defendants acted in bad faith, vexatiously, wantonly and for oppressive reasons. The defendants' conduct in connection with this phase of the litigation warrants the taxation of a reasonable amount for such attorneys' fees as were required on behalf of the plaintiff in connection with the contempt portion of this litigation. *See Schauffler v. United Association of Journeymen,* 148 F.Supp. 704 (E.D.Pa.1956), *aff'd* 246 F.2d 867 (3d Cir. 1956). This matter is remanded to the Clerk of Court for the purpose of ascertaining and taxing as costs only those attorneys' fees which were incurred by the plaintiff in connection with the contempt phase of this litigation.