365 S.E.2d 357

**UNITED MINE WORKERS OF AMERICA, etc., et al.**

v.

**Kenneth FAERBER, Commr., W.Va. Dept. of Energy, et al.**

**No. 17076.**

Supreme Court of Appeals of West Virginia.

June 15, 1987.

---

McIntyre, Haviland, & Jordan, Daniel F. Hedges, Charleston, Michael Holland, Washington, D.C., for United Mine Workers of America.

Jackson, Kelly, Holt & O'Farrell, Kay, Casto & Chaney, J. Price, T. Miller, E. Hall, Charleston, for Faerber et al.

MILLER, Justice:

In this case we are asked to determine whether a public official who has been adjudged in contempt of an order of this Court and has been ordered to pay a monetary fine is liable for the payment personally or in his official capacity. In *United Mine Workers of America v. Faerber*, 179 W.Va. 73, 365 S.E.2d 353 (1986), we found the respondent, Kenneth Faerber, the Commissioner of the Department of Energy, in civil contempt for his dilatory conduct in complying with an order of this Court. We imposed a compensatory fine, consisting principally of attorney's fees incurred by the United Mine Workers of America (UMWA) in bringing and successfully prosecuting the contempt motion.[1] The UMWA subsequently filed a motion to hold the respondent Commissioner personally liable for the payment of the fine, rather than in his official capacity.

It is of some significance that in fashioning the contempt fine against the respondent, we pointed out that it was for civil contempt and concluded that it would be:

"[A] monetary fine in the nature of compensation or damages to the UMWA because of the respondent's failure to comply with the order. In this case the UMWA suffered its costs and attorneys' fees in bringing this action, and suffered the inconvenience of making an appearance before this Court, but no other real detriment. We, therefore, hold that the respondent must pay the UMWA's costs and reasonable attorneys' fees in bringing this action in contempt, and $100 compensatory damages." 179 W.Va. at 77, 365 S.E.2d at 356. (Footnote omitted).

One of the more analogous cases is *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), which involved a federal district court order assessing attorney's fees against the Department of Corrections of the State of Arkansas. Its corrections officials had been found to have acted in bad faith in failing to implement the district court's order. This order had mandated corrective action in the Arkansas penal system because of unconstitutional prison conditions.

The United States Supreme Court was primarily concerned with the Eleventh Amendment bar of suits against the states. In order to avoid this bar, it concluded that the award was essentially a part of prospective relief and, therefore, appropriate under *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52

---

1. The contempt case was an outgrowth of *United Mine Workers of America v. Faerber*, 179 W.Va. 65, 365 S.E.2d 345 (1986) where this Court granted a writ of mandamus requiring the respondent to enforce a statute that we held required "full roof bolting" in all underground coal mines utilizing auger-type continuous coal mining equipment.

L.Ed.2d 714 (1908). It went on to say: "In this case, the award of attorney's fees for bad faith served the same purpose as a remedial fine imposed for civil contempt. It vindicated the District Court's authority over a recalcitrant litigant." 437 U.S. at 691, 98 S.Ct. at 2574, 57 L.Ed.2d at 534–35.

In *Hutto*, the Supreme Court had earlier stated "[n]or does he [appellant] question the settled rule that a losing litigant's bad faith may justify an allowance of fees to the prevailing party.[14]" 437 U.S. at 689, 98 S.Ct. at 2573, 57 L.Ed.2d at 533. (Footnote reference included).[2] It also had made this comment: "If a state agency refuses to adhere to a court order, a financial penalty may be the most effective means of insuring compliance." 437 U.S. at 691, 98 S.Ct. at 2573, 57 L.Ed.2d at 534.

Finally, in *Hutto*, the state suggested that the fees should be paid by the correction officials personally which the Supreme Court rejected in note 32, 437 U.S. at 699, 98 S.Ct. at 2578, 57 L.Ed.2d at 540:

"This is manifestly unfair when, as here, the individual officers have no personal interest in the conduct of the State's litigation, and it defies this Court's insistence in a related context that imposing personal liability in the absence of bad faith may cause state officers to 'exercise their discretion with undue timidity.' *Wood v. Strickland*, 420 U.S. 308, 321, 43 L.Ed.2d 214, [224], 95 S.Ct. 992 [1000 (1975)]."

Thus, it appears from *Hutto* that under a "bad faith" exception, attorney's fees and costs may be awarded to the prevailing party and this extends to a civil contempt proceeding where attorney's fees are awarded. We have come to much the same conclusion in *Daily Gazette Co., Inc. v. Withrow*, 177 W.Va. 110, 350 S.E.2d 738 (1986), where one of the issues was whether attorney's fees could be collected in a successful suit under our State's Freedom of Information Act, W.Va.Code, 29B–1–1, *et seq.* We concluded in Syllabus Point 6: "For a person prevailing in an action under the State's Freedom of Information Act to recover reasonable attorney's fees, the evidence before the trial court must show bad faith, vexatious, wanton or oppressive conduct on the part of the custodian of the public record(s)." However, under *Hutto*, when such an award is made against a public official, he ordinarily is not liable personally to pay the award. The *Hutto* rationale appears to have general acceptance.[3] *E.g., Jackson v. Whitman*, 642

---

**2.** Note 14 of *Hutto*, 437 U.S. at 689, 98 S.Ct. at 2573, 57 L.Ed.2d at 533, states in material part:

"An equity court has the unquestioned power to award attorney's fees against a party who shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order. *Alyeska Pipeline Service Co. v. Wilderness Soc.*, 421 U.S. 240, 258–259, 44 L.Ed.2d 141, [154,] 95 S.Ct. 1612 [1622 (1975)]; *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 54 L.Ed.2d 648, 98 S.Ct. 694 [(1978)]; *Straub v. Vaisman & Co., Inc.* 540 F.2d 591, 598–600 (CA3 1976).... The award vindicates judicial authority without resort to the more drastic sanctions available for contempt of court and makes the prevailing party whole for expenses caused by his opponent's obstinacy. *Cf. First Nat. Bank v. Dunham*, 471 F.2d 712 (CA8 1973). Of course, fees can also be awarded as part of a civil contempt penalty. *See, e.g., Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 67 L.Ed. 719, 43 S.Ct. 458 ([1923]); *Signal Delivery Service, Inc. v. Highway Truck Drivers*, 68 F.R.D. 318 (ED Pa.1975)."

**3.** The UMWA cites a number of decisions for the proposition that a public official who acts in "bad faith" can be held individually liable for costs and attorney's fees. *McNamara v. Moody*, 606 F.2d 621 (5th Cir.1979); *Universal Amusement Co., Inc. v. Vance*, 559 F.2d 1286 (5th Cir.1977); *Dillard v. Yeldell*, 334 A.2d 578 (D.C.App.1975); *Roesch–Zeller, Inc. v. Hollembeak*, 5 Ill.App.2d 94, 124 N.E.2d 662 (1955); *Elview Const. Co., Inc. v. North Scott Community School Dist.*, 373 N.W.2d 138 (Iowa 1985); *Lehan v. Greigg*, 257 Iowa 823, 135 N.W.2d 80 (1965); *Ludwig v. Board of County Comm'rs of Sarpy County*, 170 Neb. 600, 103 N.W.2d 838 (1960); *Fowler v. Gillman*, 76 Utah 414, 290 P. 358 (1930). Most of these cases arose in a markedly different context than is present here and generally involved a claim that a public official had acted to violate someone's constitutional rights. Furthermore, in most of these cases, the public officials were not found to be liable for attorney's fees in their personal capacity. *Universal Amusement Co., Inc. v. Vance, supra; Dillard v. Yeldell, supra; Elview Const. Co., Inc. v. North Scott Community School Dist., supra; Lehan v. Greigg, supra; Ludwig v. Board of County Comm'rs of Sarpy County, supra; Fowler v. Gillman, supra.* In *McNamara*, attorney's fees were personally charged pursuant to

F.Supp. 816 (W.D.La.1986); *Thomas v. City of Evanston,* 636 F.Supp. 587 (N.D.Ill. 1986); *Sebastian v. Texas Dept. of Corrections,* 558 F.Supp. 507 (S.D.Tex.1983); *Halderman v. Pennhurst State School and Hospital,* 533 F.Supp. 649 (E.D.Pa. 1982); *In re Orange County Publications v. County of Orange,* 120 A.D.2d 596, 502 N.Y.S.2d 71 (1986); *Town of Seymour v. City of Eau Claire,* 112 Wis.2d 313, 332 N.W.2d 821 (Wis.App.1983).

Two courts have attempted to articulate what conduct beyond a bad faith standard must be shown in order to fasten personal liability on the official. *Woolfolk v. Brown,* 358 F.Supp. 524 (E.D.Va.1973), involved state welfare administrators in Virginia who were found in contempt of court for implementing new work rules for welfare recipients in violation of an injunction issued by the federal district court. The court refused to impose personal liability on the malfeasant state administrators, despite concluding that the defendants had willfully and without a reasonable belief in the correctness of their actions disobeyed and violated an injunction of the court. The court indicated that the imposition of personal liability would require "a strong showing of personal, wilfull misconduct to hold an administrator ... liable," which it found had not been shown. 358 F.Supp. at 537.

In *Class v. Norton,* 505 F.2d 123 (2d Cir.1974), the Second Circuit reached a similar conclusion in a case involving the Connecticut Commissioner of Welfare. The district court in that case, although declining to hold the Commissioner in contempt for his alleged failure to comply with orders requiring timely processing of welfare assistance applications, found significant noncompliance with its prior orders and assessed a $1,000 fine against the commissioner in both his individual and official capacities to cover the appellees' attorney's fees and costs in bringing on the contempt charges. On appeal, the court reversed the

lower court's imposition of individual liability and stated:

"Proof of bad faith ordinarily suffices to justify an assessment of attorneys' fees and costs against a defendant.... Where the defendant is insulated from liability by a qualified executive immunity of the scope witnessed here, however, 'bad faith' alone in the sense used here as illuminated by the facts found would not appear to be enough. In the absence of malice or a clear abuse of discretion, this punitive award does not lie against the Commissioner. *Cf. Jordan v. Weaver,* 472 F.2d 985, 999 (7th Cir.1973), rev'd on other grounds, sub nom. *Edelman v. Jordan,* 415 U.S. 615, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

"In the light of the court's findings, this award against the appellant personally must be reversed. The court specifically declined to infer 'willful disobedience' of its prior order, [*Class v. Norton* ] 376 F.Supp. [496] at 498 [D.C.Conn. 1974] or any 'deliberate design' to nullify that order, *id.* at 500. In addition, 'much of the failure of compliance' could be attributed to insufficient clarification of department policies, *id.* at 501—a lamentable state of affairs to be sure, but hardly the stuff of which a case for malice or abuse of discretion may be made." 505 F.2d at 127–28.

In the initial mandamus proceeding, we did not set a specific time period within which the respondent was to comply with our direction to implement the rules and regulations. Prior to the contempt hearing, the respondent had issued the rules. Based on these factors, we stated in the contempt case that the respondent "did not openly defy the Court." 179 W.Va. at 75, 365 S.E.2d at 355. That determination is controlling here and compels the conclusion that the imposition of personal liability is not warranted in the circumstances of this case.[4]

the Attorney Fees Award Act of 1976, 42 U.S.C. § 1988, a provision which is inapplicable to our jurisdiction. *Hollembeak* also involved a statutory fee provision.

4. Because we have decided the merits of the personal liability issue, we do not address the procedural issue. This involves the question of whether personal liability could be found when the original mandamus and the contempt pro-

Accordingly, the UMWA's motion to impose the attorney's fee award personally upon the respondent, Commissioner Faerber, is denied.

Motion denied.

## McHUGH, Justice, dissenting:

I respectfully dissent from the holding set forth in the second sentence of the syllabus in this case and the related discussion in the body of the majority opinion. The precedents cited by the majority do not support the sweeping conclusion that a public official is not ordinarily liable personally to pay the prevailing litigant's reasonable attorney's fees incurred in a civil contempt proceeding against the public official.

The principal case relied upon by the majority, namely, *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), does not stand for the proposition that there must be more egregious conduct than "bad faith" in order to impose upon a public official personal liability for reasonable attorney's fees incurred by the prevailing litigant in a civil contempt proceeding against the public official.

In *Hutto* there were two court awards of reasonable attorney's fees. First, the district court found that the state prison officials had acted in bad faith in failing to implement its earlier injunctive orders as to prison conditions. Based upon this bad faith the district court awarded reasonable attorney's fees as part of its remedial order. These fees were expressly assessed against the Department of Correction's funds. Second, upon appeal by the state prison officials, the court of appeals affirmed the district court's order. The court of appeals imposed additional attorney's fees against the state prison officials in their official capacities to cover services on appeal and based its award of additional attorney's fees upon the Civil Rights Attorney's Fees Awards Act of 1976, not upon the bad faith of the state prison officials. The court of appeals also noted that the record supported the district court's award

of reasonable attorney's fees for the proceeding before the district court based upon the bad faith of the state prison officials.

The only argument raised before the Supreme Court was the assertion that the eleventh amendment barred the awards against the state in a federal court. The Supreme Court disagreed with this assertion. It analyzed separately the district court's attorney-fee award and the court of appeals' attorney-fee award.

With respect to the award by the district court, the Supreme Court in *Hutto* held that the award of reasonable attorney's fees *against a state* in order to vindicate the injunctive powers of a federal court over the state as a recalcitrant (or "bad faith") litigant was permissible as ancillary to prospective injunctive relief not barred by the eleventh amendment.

With respect to the award by the court of appeals, the Supreme Court in *Hutto* held that the award of reasonable attorney's fees *against a state* under the Civil Rights Attorney's Fees Awards Act of 1976 was permissible, as Congress had plenary power to enforce legislation under the fourteenth amendment by setting aside a state's eleventh amendment immunity from retroactive monetary relief.

It is therefore clear that *Hutto* does *not* involve the *personal* liability of public officials. In discussing the district court's award the Supreme Court in footnote 19 noted that "[wle do not understand the [state's] Attorney General to urge that the fees should have been awarded against the officers personally; that would be a remarkable way to treat individuals who have relied on the Attorney General to represent their interests throughout this litigation." This language in essence states that the litigation in *Hutto* was against the state officials in their official capacities. It certainly does not support the majority's conclusion in the present case that a public official ordinarily is not liable personally for reasonable attorney's fees incurred by

ceeding were brought against the Commissioner only in his official capacity. *See generally Bran-*

*don v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985).

the prevailing litigant in a civil contempt proceeding against the public official.

In discussing the court of appeals' statutory-based fee award the Supreme Court in footnote 32 observed again that "[t]he [state's] Attorney General is hardly in a position to argue that the fee awards should be borne not by the State, but by the individual officers who have relied on his office to protect their interests throughout the litigation." As seen above in the quotation of footnote 19, the state's Attorney General was *not* arguing for the personal liability of the state prison officials. The statement in the majority opinion in the present case that the state in *Hutto* suggested that the fees should be paid by the correction officials personally is not accurate. Instead, as stated in footnote 32 in *Hutto*, the dissenters in *Hutto* made that suggestion.

In response to this suggestion of the dissenters, the majority in the same footnote mentioned the personal liability of the state officials, a question not before the court: "This is manifestly unfair when, as here, the individual officers have no personal interest in the conduct of the State's litigation, ..." Personal responsibility for a successful adversary's reasonable attorney's fees incurred to remedy contumacious conduct should be triggered by the finding that the conduct was contumacious. The Supreme Court recognized as much in continuing in footnote 32 with this language: "[I]t [imposition of personal liability] defies this Court's insistence in a related context [that is, the context of qualified executive immunity] that imposing personal liability *in the absence of bad faith* may cause state officers to 'exercise their discretion with undue timidity.'" (citation omitted) (emphasis added) This footnote occurs in the Supreme Court's discussion of the court of appeals' award under the Civil Rights Attorney's Fees Awards Act of 1976, which, as footnote 32 itself states, "authorizes an attorney's fee award even though the appeal was not taken in bad faith[.]" Thus, the Supreme Court at this point in its discussion was not addressing personal liability of public officials who had acted in bad faith.

Later in its opinion in *Hutto* the Supreme Court quoted legislative history showing that attorney-fee awards in any action or proceeding under the Act should be obtained generally against the official, in his official capacity, from government funds. The legislative history indicated, however, that awards against the official in his individual capacity were not to be affected by the Act; in injunctive suits they would continue to be awarded only under the traditional "bad faith" standard. The Supreme Court then observed that there was no indication in that case that the named defendants litigated in bad faith before the court of appeals. Consequently, the Department of Corrections was the entity intended by Congress to bear the burden of that attorney-fee award. *Hutto*, 437 U.S. at 700, 98 S.Ct. at 2578, 57 L.Ed.2d at 540.

In section II of his dissenting opinion, then Associate Justice Rehnquist, joined by Justice White, criticized the majority opinion for affirming the two attorney-fee awards. The dissenting opinion stated that the effect of the district court award was to hold the taxpayers of the state responsible for the bad faith of their officials in the litigation before the district court. The dissenters also were not impressed with the rationale of footnote 32 of the majority opinion, which is quoted by the majority in the present case:

> It [the majority of the Supreme Court] insists ... that it is 'manifestly unfair' to leave the individual state officers to pay the award of counsel fees rather than permitting their collection directly from the state treasury. But petitioners do not contest the District Court's finding that they acted in bad faith, and thus the Court's insistence that it is 'unfair' to impose attorney's fees on them individually rings somewhat hollow. Even in a case where the equities were more strongly in favor of the individual state officials (as opposed to the State as an entity) than they are in this case, the possibility of individual liability in damages of a state official where the State itself could not be held liable is as old as *Ex parte Young*, 209 U.S. 123 [, 28 S.Ct.

441, 52 L.Ed. 714] (1908), and has been repeatedly reaffirmed by decisions of this Court. Since the Court evidences no disagreement with this line of cases, its assertion of 'unfairness' is not only doubtful in fact but also irrelevant as a matter of law.

*Hutto,* 437 U.S. at 716–17, 98 S.Ct. at 2587, 57 L.Ed.2d at 551 (footnote and citations omitted). *See also Ables v. Mooney,* 164 W.Va. 19, 29, 264 S.E.2d 424, 430 (1979):

> [O]ur [state] constitutional immunity provision [*W.Va. Const.* art. VI, § 35] does not forbid suits against State agencies or officials where the claim is made that they are acting unconstitutionally or beyond their lawful powers, or *have failed to perform a nondiscretionary duty imposed on them* by law. In this type of suit, the issue centers on a declaration of the legality or legitimacy of their conduct. In this sense, the inquiry focuses on whether their action is beyond the legitimate scope of their office, and they become amenable to suit because the claim is that *they have acted in a nonofficial capacity.*

(emphases added) Certainly the respondent in the present case had the nondiscretionary duty to comply with this Court's mandate as to the enforcement of full-roof bolting in all underground coal mines utilizing auger-type continuous coal mining equipment. It is equally certain that his contumacious failure to comply with such mandate was in his nonofficial capacity. Accordingly, he, not the taxpayers of this State, should bear the monetary burdens associated with this civil contempt.

None of the cases cited in the majority opinion in the present case which purportedly follow the *Hutto* rationale cite *Hutto,* and all of those cases fail to address the issue of personal, as opposed to official, liability of a public official for the reasonable attorney's fees incurred by the prevailing litigant in a civil contempt proceeding against the public official.

While this issue is not precisely articulated in the following cases, several courts have apparently concluded that a public official may be *personally* liable for the reasonable attorney's fees incurred by the prevailing litigant in a civil contempt proceeding against the public official. *See, e.g., Wright v. Jackson,* 522 F.2d 955 (4th Cir.1975) (federal prison officials; award based upon obstinacy in drafting rules and regulations and obstinacy or recalcitrance in otherwise carrying out final order of court) (prison officials represented by privately retained counsel, not by government counsel); *Nelson v. Steiner,* 279 F.2d 944 (7th Cir.1960) (District Director of Internal Revenue Service and Chief of Claims Section of Tax Division of Department of Justice; failure to comply with injunctive order as to recording of release of void tax liens and refunding certain tax collections) (both officials chastised personally); *Lasky v. Quinlan,* 426 F.Supp. 682 (S.D.N.Y.1976) (county sheriff; "stubborn resistance" in failing to comply with court order for jail improvements) (sheriff represented by privately retained counsel, not government counsel; no eleventh amendment defense asserted), *vacated on other grounds,* 558 F.2d 1133 (2d Cir.1977). In none of these cases was there even a hint that anything more than a finding of contempt was required to trigger personal liability for the adversary's reasonable attorney's fees associated with the contempt proceeding against the public official(s).

The proper perspective in this case takes into account a couple of important, fundamental principles, both of which are undermined by the majority opinion in this case. First, the executive branch of government has no right to treat with impunity the valid orders of the judicial branch. *Nelson v. Steiner,* 279 F.2d 944, 948 (7th Cir.1960). Second, "[i]n a democracy, power implies responsibility. The greater the power that defies law the less tolerant can this Court be of defiance." *United States v. United Mine Workers,* 330 U.S. 258, 312, 67 S.Ct. 677, 705, 91 L.Ed. 884, 922 (1947) (Frankfurter, J., concurring). The contumacious conduct in the present case of a major department head whose primary function is to promote the health and safety of miners in this State should not be imputed to the taxpayers of this State by laying the costs of such conduct at their feet.

For the foregoing reasons I must dissent. I am authorized to state that Chief Justice McGraw joins in this dissenting opinion.